370 P.2d 646

**HUGHES TOOL COMPANY, a Delaware corporation, Petitioner,**

v.

**The SUPERIOR COURT OF the COUNTY OF PIMA and Tucson Gas, Electric Light and Power Company, a corporation, Respondents.**

No. 7540.

Supreme Court of Arizona.

En Banc.

April 5, 1962.

Rehearing Denied June 5, 1962.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for petitioner.

Darnell, Holesapple, McFall & Spaid, Tucson, for respondent Tucson Gas, Electric Light and Power Co.

Snell & Wilmer, Phoenix, for Arizona Public Service Co., and El Paso Natural Gas Co., amici curiae.

BERNSTEIN, Chief Justice.

This is an original proceeding for a Writ of Certiorari to the Superior Court of Pima County, through which the Petitioner, Hughes Tool Company, seeks to have declared invalid an order of that court permitting the Respondent, Tucson Gas, Electric Light & Power Company, into immediate possession of property of the petitioner. An Alternative Writ of Certiorari has been issued by this Court.

Tucson Gas, under the power of eminent domain conferred in § 12–1111 A.R.S. commenced proceedings against the Hughes Tool Company to condemn power line rights of way through properties owned by Hughes. Concurrently with the complaint in this proceeding, Tucson Gas filed its application for an order permitting immediate possession and use under the provisions of § 12–1116. The Superior Court of Pima County entered its order granting immediate possession and use upon the filing with the court of a bond in the amount of $100,000, to which the parties had agreed in lieu of the deposit of double the probable damages required by § 12–1116 A.R.S.

The parties agree that the sole issue raised by this petition is whether Tucson Gas, a privately owned public service corporation, is precluded by the provisions of Art. 2, § 17, Arizona Constitution, A.R.S. from obtaining immediate possession and use under § 12–1116 A.R.S.

We have considered this as a companion case to Desert Waters v. Superior Court of Pima County, 91 Ariz. 163, 370 P.2d 652 (1962), because of the close relationship between some of the issues involved. In the Desert Waters case we held § 12–1116 was constitutional as applied to a municipal corporation obtaining immediate possession and use of properties of a privately owned utility sought to be condemned by the city. We were there concerned with the general clause of Art. 2, § 17, Arizona Constitution which reads:

"No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner, * * *."

We there construed the phrase "or paid into court for the owner," to permit, as an alternative to prior jury determination of the condemnee's damages, the payment of an amount, and upon such terms, as will adequately guarantee to the condemnee compensation for all damages that might result from granting immediate possession.

In this case we are concerned with the right of way clause of Art. 2, § 17, Arizona Constitution, which immediately follows the general clause set forth above:

" * * * and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law."

It is apparent that the clause first quoted above is general in its application and without exception, either as to persons or parties subject to its mandate, or types of property covered by its rule. In contrast, the right of way clause applies only to rights of way, exempts municipal corporations from some or all of its provisions and sets a more explicit standard of performance required of all other corporations in the cases to which it applies. It follows that the right of way clause is not an exception to the general clause, but imposes further limitations and conditions on the acquisition of rights of way by private corporations through the exercise of powers of eminent domain.

The limitations in addition to those of the general clause which the right of way clause imposes on the acquisition of property by private corporations through the exercise of eminent domain powers are: full compensation must be made in money or be *ascertained* and paid into court for the owner; no set-off for benefits accruing to the condemnee by reason of the intended improvement is permitted; and compensation must be ascertained by a jury unless waived.

In Bugbee v. Superior Court, 34 Ariz. 38, 267 P. 420 (1928), an order of the Superior Court permitting an irrigation district to enter into immediate possession and use was challenged as violating this constitutional provision. This Court stated:

"It is plain from this provision that the court's order, putting the Roosevelt Irrigation District into the immediate possession of the property before the damages were paid or ascertained, is void, unless such district is a municipal corporation within the meaning of such provision. * * *" 34 Ariz. at 40, 267 P. at 420.

The principal issue in the Bugbee case, and the only issue argued by the parties in their briefs in that case was whether the irrigation district was a municipal corporation within the meaning of this provision. The Court held that the district was a municipal corporation and affirmed the order of the Superior Court. Since the interpretation of the constitutional provision, other than the words "municipal corporation" was not before the court, and since the construction given was not necessary to its decision, the statement quoted above must be taken as dictum. However, it illustrates the plain import of the words appearing in this clause of Art. 2, § 17.

The amicus, arguing in favor of the respondent, contends however, that the right of way clause was intended only as a rule of damages, that is, that it denies to private corporations a set-off for benefits accruing to the condemnee's remaining land from improvements intended by the condemnor, but permits municipal corporations to make such a set-off. While the case of Lewis v. City of Seattle, 5 Wash. 741, 32 P. 794 (1893) supports the view that the right of way clause is only a rule of damages, its effect is adverse to the petitioner's position, since it required advance payment of damages in all cases. Moreover, in the Desert Waters opinion we chose not to follow the construction given to Washington's similar constitutional provision in the Lewis case.

Support for the view that the right of way clause states a rule of damages is also sought in the discussion of this provision by the Arizona Constitutional Convention on November 25, 1910 (set out in an

**158**

appendix at the end of this opinion). At that time a motion was made to strike the words "other than municipal" in the right of way clause of what is now Art. 2, § 17. During the discussion that followed Mr. Ingraham said:

" * * * This rule is followed in estimating the damage. The damage is found by taking from the total damage any benefit that the improvement may be to the property. For instance, it is possible to think of a large lot. The city opens a street through the lot. Now the opening of the street is a damage to the lot because it takes a portion of it, but the opening of that street may cause a business district in that vicinity and this street would be a great improvement to the remainder of the lot. The rule in that case is that the benefits that have resulted to the property may be deducted from the total loss that would otherwise come. It seems to me that this expression 'other than municipal' is put there for the purpose of protecting that peculiar feature of the law, and making an exception with municipal corporations."

We agree that the right of way clause states a rule of damages, but we cannot agree that that is its only purpose. To so limit it would be to completely ignore the other language of the clause. That those additional words are something more than a restatement of the requirements of the general clause is apparent from the changes of wording which appear in the right of way clause. "Just compensation" in the general clause becomes "full compensation * * * in money" in the right of way clause; "or paid into court" becomes "or *ascertained* and paid into court * * * which compensation shall be ascertained by a jury." (Emphasis added.) In construing the constitution some meaning or effect should be given all of the words used if it is possible to do so in conformity with the intention of the framers. Porter v. Hall, 34 Ariz. 308, 271 P. 411 (1928); Adams v. Bolin, 74 Ariz. 269, 247 P.2d 617, 33 A.L.R.2d 1102 (1952).

■ In this case the clear intent of the framers of the constitution is somewhat difficult to determine. A perusal of the record appended to this opinion will show that several views existed among those who spoke on this point. Mr. Franklin, who opposed the provision, thought that it permitted municipal corporations to expropriate rights of way without paying anything therefor. Mr. Parsons thought that it required that municipal corporations pay compensation, but that the determination of the amount of compensation was deferred until after the taking. Mr. Ingraham indicated that the provision stated a rule of damages, i. e. that only a municipal corporation could set-off benefits accruing to the remaining property of the condemnee

by reason of the right of way improvement, but also indicated that it would permit a city to develop a right of way before the determination of damages to adjoining landowners was made. In so far as these interpretations would permit a municipality to take a right of way or damage adjoining land through development of a right of way, without paying any compensation, or without making advance provision therefor, they violate the 14th amendment of the Federal Constitution, De Hansen v. District Court, 11 Ariz. 379, 94 P. 1125 (1908); Chicago B. & Q. R. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), and run counter to the construction we have given the general clause of Art. 2, § 17 in the Desert Waters case.

In the Desert Waters case we felt justified in using the discussion of the constitutional convention in conjunction with the prior history of § 12–1116 because, although the individual interpretations of members of the convention differed, all of them clearly indicated that this provision did not require an advance jury determination of compensation when a municipality exercised its powers of eminent domain. However, we do not find in these discussions, as those arguing for the respondent seem to, any common understanding that privately owned corporations may exercise the powers of eminent domain prior to a jury determination of the damages that will result. On the contrary, we find a strong indication that municipal corporations were thought to enjoy a privilege not accorded to privately owned corporations as to the time a jury determination of damages would be required. The motion before the convention was to strike the exception "other than municipal" in the right of way clause. If this motion had carried, the right of way clause and its stricter requirements would have applied to municipal corporations as well as to privately owned corporations. The comments of Mr. Parsons and Mr. Ingraham, who opposed this motion to strike the exception (and whose views apparently represented the majority since the motion to strike was defeated) clearly indicate that the exception in the right of way clause was thought necessary to permit a municipal corporation to postpone the time of a jury determination of the damages beyond what would be permitted if the exception "other than municipal" did not appear in the clause.

The Court has been cited to cases from Florida (e. g. Belcher v. Florida Power & Light Co., 74 So.2d 56 (Fla.1954)) and Arkansas (e. g. Reynolds v. Louisiana, A. & M. Ry. Co., 59 Ark. 171, 26 S.W. 1039 (1894)) wherein the courts of those states have held that, under their constitutions, a private corporation may be permitted entry prior to trial in condemnation actions. These decisions are based on constitutional provisions such as Florida's:

**160**

"No * * * right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, *or first secured to him by a deposit of money;* which compensation, * * * shall be ascertained by a jury * * *." (Emphasis added.) Fla.Const.Art. 16, § 29, F.S.A.

Such provisions are in marked contrast to those of the Arizona Constitution which requires that:

" * * * full compensation therefor be first made in money, or *ascertained* and paid into court for the owner * * which compensation shall be ascertained by a jury." (Emphasis added.) Ariz.Const. Art. 2, § 17.

■ After consideration of the clear import of the words of the right of way clause, as reflected in the previous dicta of this Court, and the record of the constitutional convention, which we view as reinforcing the construction given to this provision in the Bugbee case, supra, we hold that the right of way clause of Art. 2, § 17 requires an advance jury determination of damages (unless the jury be waived) before a corporation other than municipal takes possession of property through exercise of the power of eminent domain.

We therefore hold that § 12–1116 A.R.S. is unavailable to a privately owned corporation in the circumstances here considered.

The case is remanded to the Superior Court of Pima County with directions to vacate the order permitting immediate possession and use by the Tucson Gas, Electric Light & Power Company.

UDALL, V. C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.

APPENDIX

Verbatim Report, Arizona Constitution Convention, 1910, Vol. 3: Afternoon Session of November 25, 1910, pertaining to discussion of Section 16 of Proposition No. 94 (which Section is Art. 2, § 17 of the Arizona Constitution).

Mr. Cuniff: Mr. Chairman, I move that the word "the" before the word "fourth" (sic) in line 6 be stricken out on page 6.

Mr. Wood: I second the motion.

The motion prevailed.

Mr. Franklin: Mr. Chairman, in reading this section I notice the words "and no right of way shall be appropriated to the use of any corporation other than municipal until full compensation therefor has been made in money, etc." Do I understand the framers of this provision to mean that where a municipal corporation takes a man's property for a street purpose or for an alley purpose, and has a right of way through his property, the property owner

shall not be paid any compensation therefor? If this is the intention it seems to me that it is an absolute hardship. There are in this city private residences and under this provision the municipal authorities might take that property and not pay a single cent for it.

Mr. Parsons: Read the first four lines on that page.

Mr. Franklin: I move you, Mr. Chairman, that the words on line 4 in Section 16 "other than municipal" be stricken out.

Mr. Cunningham: I second that motion.

Speech by:

Mr. Parsons: Mr. Chairman, it seems to me that the gentleman from Maricopa misunderstands the meaning of this provision. It reads as follows: "No private property shall be taken or damaged for private or public use without just compensation having first been made or paid into court for the owner."

I take it that the meaning of this provision is that if a municipal corporation desires to open a street that it need not wait to do that until after a hearing would be required to be had in court and condemnation proceedings had, but that they might go ahead and open up the street, but that the question of compensation, so far as it referred to municipal corporations, would be determined afterward, and that the municipal corporation could not be interfered with in its work in laying out a street or highway until after these proceedings were had, but with reference to any other corporations. Before a railroad corporation could take possession and open it up they must first comply with the law, and either pay the compensation agreed upon or deposit the amount in court subject to the order of the court. It seems to me it is simply giving them the right to use the lands for the time being, but it does not deprive the owner of his right to recover the damages.

Speech by:

Mr. Franklin: Mr. Chairman, I have two objections to this proposition. One is that a municipal corporation can take a man's property, under the theory of the gentleman from Cochise, and afterwards judge what the damages are and pay him for it irrespective of the benefits to be derived. I object to municipal corporations taking a man's property the same as I do any private corporation. I am very familiar with the rule that is recognized in this territory, and it was brought up in a case from Cochise County, where Mr. Perry, as an attorney for a man in Cochise County, had the judgment of the Supreme Court that you could not take a man's property and afterwards pay him for it, but you must first have the damages and give him due and just compensation before you could take it. After that decision was rendered

a statute was enacted in this territory giving corporations, private and municipal, the authority to take the property and afterwards give the damage. I object to that, but I further object to the phraseology in this paragraph, for the reason that I do not believe it means what the gentleman from Cochise says. The Phraseology is: "No private property shall be taken or damaged for public or private use without just compensation having been first made, and no right of way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be made in money." As I understand the law about this matter, it is this: We have a general proposition that no private property can be taken or damaged without just compensation except—an exception in favor of municipal corporations who may take it and may damage it without just compensation and without regard to the benefits for its use.. I therefore think it would be a very serious thing for the property owners in cities and municipalities to have this paragraph enacted.

Speech by:

Mr. Ingraham: Mr. Chairman, the amendment offered reverts in some particulars to the present rule of the statute. The present rule of the statute is that in cases of municipal improvement property shall not be damaged without just compensation, but the improvement may be made and the compensation paid afterward. This rule is followed in estimating the damage. The damage is found by taking from the total damage any benefit that the improvement may be to the property. For instance, it is possible to think of a large lot. The city opens a street through the lot. Now the opening of the street is a damage to the lot because it takes a portion of it, but the opening of that street may cause a business district in that vicinity and this street would be a great improvement to the remainder of the lot. The rule is in that case that the benefits that have resulted to the property may be deducted from the total loss that would otherwise come. It seems to me that this expression "other than municipal" is put here for the purpose of protecting that peculiar feature of the law, and making an exception with municipal corporations.

Chairman: As many as favor the motion to strike out the words "other than municipal" after the word "corporation" in line 4, will signify by saying aye; opposed no. The secretary will call the roll.

Speech by:

Mr. Ingraham: Mr. Chairman, there is another feature of the matter that I wish to say just a word about. This clause covers not only the taking of property, but it covers the damaging of property. For instance, in the construction in the city of an

elevated railroad down a certain street. The courts in a great many instances have held that that was not the taking of property, but it is damaging of property, and you can see the difference between these two terms, the mere taking of property and the damaging of property. This section, were the amendment adopted, might prevent the City of Phoenix from putting a double track street railway down some street, if the city were to do it herself, because that might be a damage to the property. It would not be a taking of the property along that street, but it might be a damage to the property and the City could be forbidden from doing that, making that improvement, until all these questions of damage to the property have been settled. In other words, you could make that improvement about 25 years from now.

Chairman: The secretary will call the roll.

Roll call showed 20 ayes and 28 nays.

Mr. Chairman: The motion is lost.

Mr. Webb: Mr. Chairman, I ask your indulgence, please, to refer back to Section 11. You passed it hurriedly.

Mr. Chairman: If the gentleman from Graham will wait until we have completed Section 16. Are there any further amendments to Section 16. If not, the section will be considered adopted as read.