443 P.2d 416

Mary Jane GARDINER, as Executrix of the Estate of Laurabel Gardiner, Deceased, Petitioner,

v.

The Honorable Laurens L. HENDERSON, Judge of the Superior Court of Maricopa County, Respondent;

CITY OF PHOENIX, a municipal corporation, Real Party in Interest.

No. 9316.

Supreme Court of Arizona.
In Banc.
July 16, 1968.

Moore, Romley, Kaplan, Robbins & Green, by Elias M. Romley, Phoenix, for petitioner.

Robert J. Backstein, City Atty., Allen K. Polley, Asst. City Atty., and Dow Ben Roush, Sp. Counsel, City of Phoenix, for respondent and real party in interest.

The League of Arizona Cities and Towns by J. LaMar Shelley, Gen. Counsel, amicus curiae.

Salt River Project Agricultural Improvement and Power Dist. by Jennings, Strouss, Salmon & Trask, by Hamilton E. McRae III, Phoenix, amici curiae.

City of Scottsdale, by Richard R. Filler, City Atty., amicus curiae.

City of Mesa, by J. LaMar Shelley, City Atty., amicus curiae.

State of Arizona, by Darrell F. Smith, former Atty. Gen., by Stanley F. Goodfarb, Sp. Asst. Atty. Gen., County of Maricopa, by Robt. K. Corbin, Maricopa County Atty., amici curiae.

UDALL, Vice Chief Justice:

This is an original proceeding for a writ of prohibition/or certiorari through which petitioner, Mary Jane Gardiner, seeks to have declared invalid an order of the Superior Court of Maricopa County permitting the City of Phoenix, the real party in interest, into immediate possession of property of petitioner. A writ of certiorari was issued by this court.

The facts involved, which are undisputed, are substantially as follows: Mary Jane Gardiner, as the executrix of the estate of Laurabel Gardiner, deceased, is one of the defendants in a condemnation action pending in the Superior Court of Maricopa County, Arizona, in which the City of Phoenix, a municipal corporation, is the plaintiff.

The action was brought to condemn for public use Lots 2, 4, and 6, Block 10, and Lots 2, 4, 6 and 8, Block 19, Original Townsite of Phoenix which belonged to and is a part of the estate of Laurabel Gardiner, deceased.

On March 13, 1968, the plaintiff filed an application with the court for immediate possession of the real property above described, and an order to show cause was then issued which came on regularly for hearing on May 20, 1968. At the conclusion of said hearing the respondent, the Honorable Laurens L. Henderson, Judge of the Superior Court, made and entered an order dated May 22d 1968, which provides, inter alia, as follows:

"The court is of the opinion that in specifying the form of the deposit as set forth in section 12–1116, A.R.S., the legislature did not violate Article 2, Section 17 of the Arizona Constitution.

"It is, therefore, ORDERED that plaintiff may take possession of defendant's property upon depositing with the clerk of the Superior Court a surety bond * * * to be approved by the court * * *, all in accordance with formal written order to be presented."

The question presented by petitioner is as follows:

"Can private property in Arizona be taken or damaged for public use by a City depositing in Court a surety bond instead of money where, as here, the State Con-

stitution provides that "No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner?"

Our procedural condemnation statute, A. R.S. § 12–1116 which provides the machinery for the immediate possession of property sought to be condemned was originally adopted from California (see West's Ann. C.C.P. § 1243) and has remained on our books substantially unchanged from 1909 (§ 2453 R.S. '01, am., § 1, Ch. 8, L. '09) to 1964. The implementation for immediate possession of property sought to be condemned was augmented by the condemnor paying into court a *deposit of money* in double the amount of probable damages as determined by the court. Such money was held by the clerk of the court for the use and benefit of the condemnee. See A.R.S. § 12–1116, 1956.

In 1964 and again in 1967 the legislature saw fit to amend this long standing procedure by providing for "a bond" rather than, or in lieu of a money deposit where the condemnor was the state, county, city, town, or political subdivision thereof.[1]

---

1. A.R.S. § 12–1116 as amended in 1964 and 1967, with the amendments bracketed, now reads as follows:

"12–1116. ACTION[S] FOR CONDEMNATION; IMMEDIATE POSSESSION; MONEY DEPOSIT; SUBSTITUTION FOR CASH DEPOSIT; [PROVIDING BOND FOR CONDEMNATIONS BY THE STATE OR ITS SUBDIVISIONS]

"A. All actions for condemnation shall be brought as other civil actions in the superior court of the county in which the property is located. The plaintiff may, at the time of filing the complaint, or at any time thereafter, make application to the court for an order permitting him to take possession of, and use the property sought to be condemned for the purpose prayed for.

"B. Upon filing the application, a time for hearing it shall be fixed, and notice thereof served upon the parties in interest by personal service within the state, or by publication if without the state, in such manner as the court directs.

"C. On the day of the hearing, if it appears that the use for which the property is sought to be condemned is a necessary use, the court shall receive evidence as to the probable damages to each owner, possessor or person having an interest in each parcel of land sought to be condemned, and may direct that upon a deposit of money [or if the condemnor is the state, county, city, town, or political subdivision thereof, a bond in a form to be approved by the court] in double the amount of the probable damages so found to each person in interest, the plaintiff shall be let into the possession and full use of the parcels of land, as described in the order, for the purposes therein specified.

"D. The money [or bond] shall be deposited with the clerk of the court, and held by him for the use and benefit of each person having an interest in each parcel of land sought to be condemned, subject to final judgment after trial of the action, and held also as a fund to pay any further damages and costs re-

It is the position of the petitioner that A.R.S. § 12–1116, as amended provides the machinery for immediate taking of possession of property by the real party in interest, City of Phoenix, which is not in compliance with the mandate of Art. 2, § 17 of the state constitution, A.R.S.:

"* * * No private property shall be taken or damaged for public or private use without just compensation having first been *made,* or *paid* into court for the owner * * *." [emphasis added]

The respondent, superior court, found on the other hand "that in specifying the

form of the deposit as set forth in section 12–1116, A.R.S., the Legislature did not violate Article 2, section 17 of the Arizona Constitution." The real party in interest, City of Phoenix, and amici curiae, The League of Arizona Cities and Towns and the Salt River Project Agricultural Improvement and Power District have filed able and thorough briefs in support of the trial court's finding.

It is argued on behalf of respondent that eminent domain is an inherent power in the people, limited only as they may determine in their constitution, County of Maricopa v. Anderson, 81 Ariz. 339, 306 P.2d 268.

covered in the proceedings, as well as all damages sustained by defendant if for any cause the property is not finally taken for public use. The deposit of the money [or bond] shall not discharge plaintiff from liability to maintain the fund in full, but it shall remain deposited for all accidents, defalcations or other contingencies, as between the parties to the proceedings, at the risk of plaintiff, until the compensation or damage is finally settled by judicial determination, and the court awards such part thereof as shall be determined to defendant, or until the clerk is ordered by the court to disburse it. The clerk of the court shall be liable to plaintiff for the deposit [or bond] if lost or abstracted.

"E. The court may order the money [or bond] deposited in the state treasury, and the state treasurer shall receive the money [or bond], receipt for and safely keep it in a special fund to be entered on his books as a condemnation fund, and he is liable to plaintiff for the faithful performance of the obligation. The state treasurer shall disburse money deposited [or forfeit the bond] as the court may direct.

"F. The parties may stipulate as to the amount of deposit, or for a bond from the plaintiff in lieu of a deposit.

"G. The parties may also stipulate, in lieu of a cash deposit in double the amount of probable damages as found by the court, that:

"1. The plaintiff may deposit the amount for each person in interest which plaintiff's valuation evidence shows to be the probable damages to each person in interest, and,

"2. Each person in interest may, on order of the court, withdraw the amount which plaintiff has deposited for his interest, and,

"3. The plaintiff shall deposit a separate amount, [or if the condemnor is the state, county, city, town or political subdivision thereof a bond] which is equal to the difference between double the amount of the court's determination of probable damages and the total amount which is deposited for the withdrawal of all persons in interest, or the parties, [other than the state, county, city, town, or political subdivision thereof,] may stipulate for a bond in lieu of a separate deposit equal to the difference between double the amount of the court's determination of probable damages and the total amount which is deposited for withdrawal of all persons in interest. No person in interest for whom a deposit has been made, pursuant to stipulation for his withdrawal, shall be entitled to interest as prescribed in subsection B of § 12–1123 upon the amount which he is entitled to withdraw, but he shall be entitled to interest upon that portion of the final judgment, exclusive of costs allowed by the court, which exceeds the amount which is deposited for his withdrawal. Should the amount which is withdrawn by any defendant exceed the amount of the final judgment awarded the defendant inclusive of costs allowed by the court, such defendant withdrawing the funds shall forthwith repay to plaintiff such excess, with legal interest from date of withdrawal to date of repayment.

"H. No stipulation which is made nor any evidence which is introduced pursuant to this section shall be introduced in evidence or used to the prejudice of any party in interest on the trial of the action. As amended Laws 1964, Ch. 147, § 1; Laws 1967, Ch. 54, § 1."

They note that Art. 2, § 17, supra goes on to say:

"* * * and no right of way shall be appropriated to the use of any corporation *other than municipal,* until full compensation therefor be first made *in money,* or ascertained and paid into court for the owner * * *."

Respondents contend that if the framers of the constitution intended the general clause ("No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner * * *.") to mean only the deposit of "money" they could and would have said so; and, hence, the absence of "in money" in the general clause repudiates petitioner's claim that only a deposit of money is constitutional compliance.

Before the passage of the 1964 and 1967 amendments this court wrote lengthy and exhaustive decisions on the constitutionality of A.R.S. § 12–1116 as it then read, wherein we thoroughly reviewed the legislative history of both the involved statute and the proceedings of the Constitutional Convention in regard to Art. 2, § 17. See Desert Waters, Inc. v. Superior Court, 91 Ariz. 163, 370 P.2d 652; Hughes Tool Company v. Superior Court, 91 Ariz. 154, 370 P.2d 646; and cases cited therein. It would unduly lengthen this decision to reiterate what we there said.

Suffice it to note that we held in Desert Waters Inc. v. Superior Court, supra:

"It appears clear to us from the history of § 12–1116 and from the discussions of the constitutional convention that the phrase 'or paid into court for the owner' in the constitutional provision which states, 'No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner, * * *' was used to

permit, as an alternative to advance determination, a *payment* into court of an amount and upon such terms as would adequately secure to the condemnee compensation and damages resulting from granting immediate possession to a municipal corporation, as well as damages for the property taken." 91 Ariz. 170, 370 P.2d 657. [Emphasis added]

And we said in Mandl v. City of Phoenix, 41 Ariz. 351, 18 P.2d 271:

"Section 1337, Revised Code of 1928, [predecessor of A.R.S. § 12–1116] provides for money to be *paid* into court to secure or compensate the owner of property taken or damaged. *These provisions* [Art. 2, § 17] of our law clearly contemplate compensation to the owner *in money* at the time or before his property is taken." 41 Ariz., at 355, 18 P.2d at 272 (Emphasis added).

A bond is not money. A bond is not payment. A bond is not "just compensation made" and its deposit with a court is not a payment into court. A bond is a certificate or evidence of a debt. It is a contract to pay upon the happening of certain contingencies. It is a mere promise to pay. See Black's Law Dictionary, Deluxe Fourth Edition.

Article 2, § 32 of the Arizona Constitution, states:

"The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise."

The immediate taking of possession of property by a municipality is a taking of property. Possession is certainly one of the greatest attributes of ownership of property. The possessor exercises dominion over the property, and a condemnor, be it municipality or private corporation thereafter denies the owner of its usage, its rental value, and its enjoyment. Where the condemnor proceeds to convert the

property to its public usage he proceeds to "damage" the property. While a taking may not be complete until after final judgment and vesting of title, a taking nevertheless commences with an order of immediate possession which permits the condemnor to enter the land, demolish the improvements, and commence the erection of public improvements. It follows therefor that an order of immediate possession must comply with Art. 2, § 17, supra.

"It is obvious from the provisions of the Constitution and laws of this state that private property may not be taken for public use without just compensation having first been made *or paid into court for the owner*. The portion of the Constitution quoted above is mandatory." State ex rel. Morrison v. Jay Six Cattle Company, 85 Ariz. 220, at page 224, 335 P.2d 799, at page 801. [Emphasis in original]

A bond is a security for just compensation and its deposit in court is a promise to pay into court at a later date. In holding the bond provision of A.R.S. § 12–1116 unconstitutional because of the mandatory provisions of Art. 2, § 17, we yet note the practical and economical wisdom of the arguments for bond usage. The root of our power, however, is derived from the Constitution and the preservation of its mandatory provisions is essential to the security of individual rights and the perpetuity of free government. If it be deemed desirable in this state that the "state, county, city, town, or political subdivision thereof" be entitled to file "a bond in a form to be approved by the court" then that result must be obtained through constitutional amendatory channels.

The order of the superior court is vacated and the matter remanded to the trial court for proceedings not inconsistent with this decision.

McFARLAND, C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.