IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARIZONA ELECTRIC POWER COOPERATIVE, INC.,
*Plaintiff/Appellee/Cross-Appellant,*

*v.*

DJL 2007 LLC, an Arizona limited liability company; DJL ENTERPRISES,
LLC, an Arizona limited liability company; EAST COAST INVESTOR
GROUP 535, LLC, a Delaware limited liability company; MARK G.
KNORR and CAROL A. KNORR, husband and wife; SILVER CREEK
LAND CO., LLC, an Arizona limited liability company; and MICHAEL
SUDA, a married man as his sole and separate property; DONALD
SUDA, a married man as his sole and separate property,
*Defendants/Appellants/Cross-Appellees.*

MOHAVE ELECTRIC COOPERATIVE, INCORPORATED, an Arizona
Electric Cooperative Non-Profit Membership Corporation,
*Intervenor/Appellee/Cross-Appellant.*

No. 1 CA-CV 16-0097
FILED 5-9-2019

Appeal from the Superior Court in Mohave County

Nos. B8015CV201404008, B8015CV201404009, B8015CV201404010,
B8015CV201404011, B8015CV201404012, B8015CV201404013
(Consolidated)
The Honorable Charles W. Gurtler, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**



COUNSEL

Gust Rosenfeld, PLC, Phoenix
By Charles W. Wirken

Jennings Strouss & Salmon, PLC, Phoenix
By Christopher W. Kramer
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Zeitlin & Zeitlin, PC, Phoenix
By Dale S. Zeitlin
*Counsel for Defendants/Appellants/Cross-Appellees*

The Law Offices of Larry K. Udall, PLLC, Chandler
By Larry K. Udall
*Counsel for Intervenor/Appellee/Cross-Appellant*

**OPINION**

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Jon W. Thompson and Judge Paul J. McMurdie joined.

**C A T T A N I**, Judge:

¶1        Both sides in these consolidated condemnation cases appeal from the superior court's rulings (1) fixing a valuation date for purposes of calculating just compensation for a right of way for electric transmission lines and (2) determining the ownership of existing support structures and transmission lines within the right of way. We affirm the court's ruling as to ownership of the existing structures and transmission lines, but we reverse the ruling as to valuation date. Under the right-of-way clause of Article 2, Section 17 of the Arizona Constitution, a private corporation with statutory eminent domain authority cannot effect a taking (which establishes the valuation date) by simply occupying property. Instead, the taking occurs only after the jury determines damages and the private corporation pays full compensation. Because the superior court chose a pre-taking valuation date, we reverse and remand for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**          On May 15, 1981, the United States Department of the Interior, Bureau of Land Management ("BLM"), granted a 30-year right of way to Arizona Electric Power Cooperative, Inc., across public lands in Mohave County for use as an easement for 69kV electric transmission lines. Both 69kV and 230kV transmission lines were built within the right of way.

**¶3**          By 1990, the BLM had transferred title to the property subject to the right of way into private hands. DJL 2007 LLC, DJL Enterprises LLC, East Coast Investor Group 535, LLC, Mark and Carol Knorr, Silver Creek Land Co., Michael Suda, and Donald Suda (collectively, "Landowners") are the current owners of the relevant parcels. Southwest Transmission Cooperative, Inc.,[1] as a successor in interest, obtained Arizona Electric Power's interest in the right of way in the early 2000s, and Southwest Transmission sold the 69kV line to Mohave Electric Cooperative, Inc., a few years later.

**¶4**          The BLM right-of-way grant expired on May 14, 2011. But Southwest Transmission and Mohave Electric continued to operate the transmission lines thereafter, and in January 2013, Landowners sent Southwest Transmission a letter alleging that it was trespassing.

**¶5**          Southwest Transmission is a nonprofit electric generation and transmission cooperative corporation under Title 10, Chapter 19, Article 4 of the Arizona Revised Statutes ("A.R.S.") and, as such, has statutory authority to exercise the power of eminent domain for purposes of maintaining or operating electric transmission lines. *See* A.R.S. § 10-2127(A)(11); *see also* A.R.S. § 12-1111(10). Accordingly, in January 2014, Southwest Transmission filed these eminent domain actions to condemn rights of way for the transmission lines. Mohave Electric intervened as the owner of one of the transmission lines.

**¶6**          The superior court ruled that Southwest Transmission was not entitled to an order of immediate possession under A.R.S. § 12-1116. Instead, recognizing the practical reality that Southwest Transmission

---

[1]     Southwest Transmission merged into Arizona Electric Power after this appeal was filed, and Arizona Electric Power was substituted as appellee/cross-appellant. Given Southwest Transmission's participation throughout the superior court proceedings and adopting the convention employed by the parties, we refer to Southwest Transmission rather than Arizona Electric Power as prospective condemnor throughout this decision.

would need to continue to operate, maintain, and repair the lines during the pendency of the condemnation proceedings, the court entered a preliminary injunction allowing ongoing access to and operation of the lines.

¶7 Landowners then moved the court to determine the valuation date for purposes of calculating just compensation to be paid for the property subject to condemnation. Landowners argued that the land should be valued as of the date the court eventually enters the final order of condemnation. Southwest Transmission countered that the land should be valued as of May 15, 2011, the date it remained in possession immediately following expiration of the BLM right-of-way grant. After briefing and oral argument, the court adopted a middle ground, ruling that the valuation date would be January 15, 2014: the date the summons issued in the condemnation suit. The court further ruled that Landowners would be entitled to rental damages from expiration of the grant to the summons date, and that interest would accrue from the valuation date on the amount of compensation ultimately awarded. The court denied Landowners' subsequent motion for reconsideration.

¶8 The parties then filed cross-motions for partial summary judgment concerning ownership of the transmission lines and support structures, which would determine whether just compensation for the taking includes the value of those improvements or just of the underlying real property interest. The superior court ruled in favor of Southwest Transmission, finding no indication that title to the improvements had passed to Landowners.

¶9 At the parties' request, the superior court then entered a partial final judgment related to the two issues (valuation date and ownership of the improvements). *See* Ariz. R. Civ. P. 54(b). Landowners timely appealed, and Southwest Transmission and Mohave Electric timely cross-appealed.

¶10 This court initially dismissed the appeal for lack of appellate jurisdiction under A.R.S. § 12-2101(A)(1) (appeal from final judgment), noting that the judgment was not subject to Rule 54(b) certification because it did not resolve any claims of any of the parties. *See* Ariz. R. Civ. P. 54(b); *Musa v. Adrian*, 130 Ariz. 311, 313 (1981). The Arizona Supreme Court then granted Landowners' petition for review and remanded to this court to consider whether appellate jurisdiction existed under A.R.S. § 12-2101(A)(6). *See Bilke v. State*, 206 Ariz. 462, 466, ¶ 16 (2003).

¶11        A.R.S. § 12-2101(A)(6) authorizes appeal "[f]rom an interlocutory judgment that determines the rights of the parties and directs an accounting or other proceeding to determine the amount of the recovery." But a right to appeal from such an interlocutory judgment is not automatic; instead, the superior court has discretion to determine whether an immediate appeal should be available. *See Bilke*, 206 Ariz. at 466–67, ¶¶ 20–21. To do so, the superior court must make two distinct findings: first, whether the ruling as to the rights of the parties is final, and second, whether amount of recovery is indeed the only issue remaining. *See id.* at 467–68, ¶¶ 21, 23, 28; *see also Ciena Capital Funding, LLC v. Krieg's, Inc.*, 242 Ariz. 212, 215–16, ¶ 7 (App. 2017). Although the superior court's Rule 54(b) certification satisfied the finality prong, *see Bilke*, 206 Ariz. at 467, ¶ 23, the parties had not requested and the superior court had not made the requisite discretionary finding "expressly direct[ing] that the only issue remaining is the amount of recovery." *See id.* at 468, ¶ 28. Accordingly, we stayed the appeal and revested the superior court with jurisdiction to determine whether (A)(6) certification was appropriate. The superior court did so, and we now have jurisdiction under A.R.S. § 12-2101(A)(6).

## DISCUSSION

### I.        Valuation Date.

¶12        The superior court ruled that Southwest Transmission lacked authority to condemn property simply by occupying it (a "taking by occupation"), so Southwest Transmission and Mohave Electric were holdover tenants between expiration of the BLM right-of-way grant and the date of the taking, and Landowners would be entitled to rental damages for that period. The court further reasoned that Southwest Transmission became an agent of the state for condemnation purposes when it filed the direct condemnation action, *see* A.R.S. § 12-1115(C), at which point the taking occurred because the government (through Southwest Transmission) was in actual physical possession of the property.

¶13        Although the parties agree that the valuation date must reflect the date of the taking, both sides challenge the court's determination of the valuation date. Southwest Transmission (joined by Mohave Electric) asserts that the taking occurred by occupation immediately following expiration of the BLM right-of-way grant. Landowners counter that, because Southwest Transmission is exercising eminent domain power as a non-municipal corporation, the taking cannot occur until a jury determines and Southwest Transmission tenders payment of just compensation. Neither side challenges the superior court's ruling as to holdover tenancy

pending the date of taking (regardless of when it occurred) or Landowners' entitlement to rental damages, although accepting Southwest Transmission's proposed taking date would in effect moot these issues. We review the superior court's ruling de novo as a pure question of law. *See League of Ariz. Cities & Towns v. Brewer*, 213 Ariz. 557, 559, ¶ 7 (2006).

**¶14** Both the United States and the Arizona Constitutions proscribe the taking of private property without payment of just compensation. U.S. Const. amend. V; Ariz. Const. art. 2, § 17 ("No private property shall be taken or damaged for public or private use without just compensation having first been made . . . ."). To satisfy the constitutional requirement of providing "just compensation," the property condemned must be valued as of the date of the constitutional taking. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9–10 (1984); *Calmat of Ariz. v. State ex rel. Miller*, 176 Ariz. 190, 193–95 (1993).

**¶15** By statute, Arizona has designated the date of the summons in a condemnation action as the presumptive valuation date. A.R.S. § 12-1123(A). When the summons and the taking occur close in time, the summons date "establishes a practical and uniform date for valuation purposes that is presumptively reasonable." *City of Scottsdale v. CGP-Aberdeen, L.L.C.*, 217 Ariz. 626, 634, ¶ 36 (App. 2008); *see also Calmat*, 176 Ariz. at 193–94. But if the summons is remote in time from the taking and the value of the property has changed in the interim, the value of the property on the date of the taking must control. *CGP-Aberdeen*, 217 Ariz. at 629, 634, ¶¶ 10, 36.

**¶16** Here, Southwest Transmission continued to occupy the property after the expiration of its right to do so under the BLM right-of-way grant in May 2011. If a *governmental* entity had so occupied Landowners' property, that occupation would have constituted a taking, subject to an owner's claim for inverse condemnation. *See In re Forsstrom*, 44 Ariz. 472, 481, 488 (1934) (describing a "taking" as "[a]ny substantial interference" with an owner's property rights), *overruled in part on other grounds by Mohave County v. Chamberlin*, 78 Ariz. 422, 430 (1955), *and State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 324 (1960); *see also A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 525, ¶ 18 (App. 2009). But the Arizona Constitution imposes additional limitations on the exercise of eminent domain by a private corporation (like Southwest Transmission) that preclude a taking by occupation. In particular, as explained below, a private corporation may not effect a taking until there has been a jury determination of damages and full compensation has been paid to the property owner.

¶17         As relevant here, the Arizona Constitution's eminent domain provision includes two operative clauses:

> [(1)] No private property shall be taken or damaged for public or private use without just compensation having first been made, paid into court for the owner . . . ,
>
> [(2)] and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, . . . which compensation shall be ascertained by a jury, unless a jury be waived . . . .

Ariz. Const. art. 2, § 17 (line break added).[2]  The Arizona Supreme Court described the interplay of these two clauses in *Hughes Tool Co. v. Superior Court*: the first—the general clause—requires just compensation in all takings, whereas the second—the right-of-way clause—"imposes further limitations and conditions on the acquisition of rights of way by private corporations through the exercise of powers of eminent domain."  91 Ariz. 154, 156 (1962).

¶18         In *Hughes Tool*, a private corporation with eminent domain authority filed a direct condemnation action to condemn power line rights of way.  *Id.* at 155.  The superior court issued an order under A.R.S. § 12-1116 permitting immediate possession and use before conclusion of the

---

[2]         In full, the general and right-of-way clauses read:

> No private property shall be taken or damaged for public or private use without just compensation having first been made, paid into court for the owner, secured by bond as may be fixed by the court, or paid into the state treasury for the owner on such terms and conditions as the legislature may provide, and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law.

Ariz. Const. art. 2, § 17.

condemnation proceedings, and the property owner sought review. *Id.* at 155–56. The Arizona Supreme Court directed the superior court to vacate the order for immediate possession. *Id.* at 160. The court highlighted the distinction between the requirements of the general clause, which authorizes a taking once just compensation is "paid into court for the owner," as compared to the right-of-way clause, which requires compensation first be "*ascertained and* paid into court for the owner." Ariz. Const. art. 2, § 17 (emphasis added); *Hughes Tool*, 91 Ariz. at 158. The supreme court thus held that the right-of-way clause required "an advance jury determination of damages (unless the jury be waived) before a corporation other than municipal takes possession of property through exercise of the power of eminent domain." *Hughes Tool*, 91 Ariz. at 160.

**¶19**     In *Hughes Tool*, that meant that a private corporation could not receive a § 12-1116 order for immediate possession, because that would allow a private corporation to take possession before a jury determined damages. *Id.*   Here, the *Hughes Tool* holding means that a private corporation exercising statutory eminent domain authority is not constitutionally authorized to effect a taking until after trial and payment; it cannot take property in a constitutional sense simply by occupation. Thus, Southwest Transmission's ongoing use of the property was as a hold-over tenant and not as a condemnor in possession.

**¶20**     Southwest Transmission argues, however, that *Hughes Tool* only applies to § 12-1116 orders for immediate possession and does not apply where, as here, the private condemnor is already occupying the property subject to condemnation. Although *Hughes Tool* arose from an order for immediate possession, its reasoning and holding apply generally to a private corporation seeking to "take[] possession of property through exercise of the power of eminent domain," not just to a single manner in which a private corporation might do so. *See id.* at 156, 160. More importantly, the constitutional right-of-way clause itself draws no such distinction. *See* Ariz. Const. art. 2, § 17.

**¶21**     The authority on which Southwest Transmission relies does not support the premise that a private corporation with the power of eminent domain can effect a taking by occupation. All of the Arizona case law on which Southwest Transmission relies for general principles of taking by occupation involve takings by governmental entities, not private corporations. *See, e.g., Calmat*, 176 Ariz. 190; *Gardiner v. Henderson*, 103 Ariz. 420 (1968); *State v. Leeson*, 84 Ariz. 44 (1958); *In re Forsstrom*, 44 Ariz. 472; *A Tumbling-T Ranches*, 222 Ariz. 515. And all the out-of-jurisdiction cases specific to condemnation by private entities on which Southwest

Transmission relies arose in jurisdictions that do not have constitutional limitations analogous to Arizona's Article 2, § 17 right-of-way clause. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (U.S. Const. amend. V; N.Y. Const. art. 1, § 7); *Windrow v. Middle Tenn. Elec. Membership Corp.*, 376 S.W.3d 733, 737–38 (Tenn. Ct. App. 2012) (Tenn. Const. art. 1, § 21); *see also, e.g., Cantu v. Pac. Gas & Elec. Co.*, 234 Cal. Rptr. 365 (Ct. App. 1987) (Cal. Const. art. 1, § 19).

¶22　　　　The closest thing to contrary authority in Arizona case law cited by Southwest Transmission appears in a single reference in *Gardiner*:

> The immediate taking of possession of property by a municipality is a taking of property. Possession is certainly one of the greatest attributes of ownership of property. The possessor exercises dominion over the property, and *a condemnor, be it municipality or private corporation* thereafter denies the owner of its usage, its rental value, and its enjoyment.

103 Ariz. at 424 (emphasis added). But *Gardiner* itself involved a taking by a municipality, not a private corporation. *Id.* at 421. And *Gardiner* construed the requirements for taking by means of an order for immediate possession under § 12-1116, which *Hughes Tool* had already ruled was not available to a private corporation. *See* 103 Ariz. at 423, 425. In short, *Gardiner* did not consider the right-of-way clause's restrictions on taking by a private corporation. Although this language would support Southwest Transmission's position if read broadly, *Gardiner*'s dicta cannot override the express language of the constitutional right-of-way clause or the express holding of *Hughes Tool*.

¶23　　　　For the same reasons, the superior court's ruling that the taking occurred on the date of the summons also fails. That conclusion made practical sense under the circumstances of this case: it recognized that Southwest Transmission could not unilaterally exercise eminent domain by occupation, but also that Southwest Transmission was in fact in possession when it began to exercise its eminent domain power properly by filing the direct condemnation action. But the right-of-way clause as construed in *Hughes Tool* forecloses this result. As a private corporation, Southwest Transmission cannot take possession of property as a condemnor until after trial and payment of just compensation. *See Hughes Tool*, 91 Ariz. at 160. To hold otherwise would, in effect, allow the result that *Hughes Tool* reversed: a private corporation could achieve the same result as an order for

immediate possession (even though § 12-1116 is unavailable) by simply entering the property during the pendency of the condemnation action.

¶24 Southwest Transmission's other arguments are similarly unavailing. It suggests that Landowners could have formalized the taking by filing an inverse condemnation action immediately after expiration of the BLM right-of-way grant (locking in that date as the date of the taking), so the date of the taking should not be controlled by Landowners' decision not to do so. But this argument assumes that the taking occurred when Southwest Transmission outstayed the BLM right-of-way grant, which the right-of-way clause forbids. Moreover, Southwest Transmission itself could have eliminated this delay by pursuing a direct condemnation claim years earlier.

¶25 Southwest Transmission further argues that using the end of the condemnation action as the valuation date provides an incentive for delay, as one party or the other (depending on whether property values were rising or falling) would wish to delay resolution for economic gain. But such policy concerns cannot override the constitutional limitations on a private corporation's condemnation authority. And the argument ignores that, in straight-condemnation proceedings under federal law, the date of the taking is similarly the date the government tenders payment after final judgment on just compensation. *See, e.g.*, *Kirby Forest*, 467 U.S. at 3–4, 11–12. In any event, the superior court has other tools to ensure the efficient processing of cases before it and, in appropriate circumstances, to sanction a party that unreasonably delays the proceeding. *See, e.g.*, A.R.S. § 12-349(A)(3); *Fenton v. Howard*, 118 Ariz. 119, 121 (1978) ("Every court has inherent power to do those things which are necessary for the efficient exercise of its jurisdiction."); *State v. Superior Court*, 39 Ariz. 242, 247–48 (1931) (same); *see also* Ariz. R. Civ. P. 1 (directing that the civil rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

¶26 Although Southwest Transmission continued to possess and use the transmission lines after the BLM right-of-way grant expired, it did not—and it constitutionally *could not*—do so in the capacity of a condemnor. Instead, Southwest Transmission simply became a hold-over tenant on that date, and under the right-of-way clause of Article 2, § 17, could not take Landowners' property in a constitutional sense until after trial and payment. Accordingly, the value of just compensation must reflect the value at that time.

¶27 We thus reverse the superior court's ruling as to valuation date as described in this decision. As neither side challenged the court's ruling as to the status of Southwest Transmission and Mohave Electric as holdover tenants from expiration of the BLM right-of-way grant through the date of the taking and Landowners' entitlement to rental damages as compensation for the period, the balance of the ruling stands.

## II. Ownership of the Electric Transmission Lines and Structures.

¶28 The superior court granted Southwest Transmission's motion for partial summary judgment (joined by Mohave Electric) on ownership of the electric transmission lines and structures. The court ruled as a matter of law that Southwest Transmission and Mohave Electric originally owned the improvements and, under the undisputed factual circumstances presented, title had never passed to Landowners. Accordingly, the value of the improvements would not be included when calculating just compensation for the taking. Landowners challenge this ruling, urging that Southwest Transmission and Mohave Electric became trespassers and thus forfeited the improvements when they neither paid rent nor removed the lines after expiration of the BLM right-of-way grant, or alternatively, that disputed facts as to the reasonableness of Southwest Transmission's conduct preclude summary judgment.

¶29 Summary judgment is appropriate if there are no genuine issues of material fact and, based on those undisputed facts, the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the party against whom judgment was entered. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012).

¶30 The undisputed facts establish that Southwest Transmission and Mohave Electric own the transmission lines and structures. Southwest Transmission built the lines and structures while lawfully occupying the property pursuant to the BLM right-of-way grant. And the terms of that grant contemplated that Southwest Transmission would retain these improvements. The grant incorporated regulations including 43 C.F.R. § 2807.19(a), which required the grantee to remove all facilities (defined as improvements or structures) after the grant expired. *See also* 43 C.F.R. § 2801.5(b) (defining "Facility"). By requiring removal, the agreement made clear the parties' intent that Southwest Transmission, not the property owner, owned the improvements.

¶31        Because Southwest Transmission retained ownership of the lines and structures, even the authorities on which Landowners rely support the notion that Southwest Transmission need not pay compensation for these pre-condemnation improvements.  In *State v. Teller Native Corp.*, for instance, the Supreme Court of Alaska acknowledged the general rule that a condemnor need not pay for its own pre-condemnation improvements unless those improvements were made under a contract giving the landowner the right to keep them.  904 P.2d 847, 850 (Alaska 1995).  Because the condemnor in that case had specifically agreed to build certain improvements (an airport, taxiway and runway, roadway, and parking area) as partial consideration for the lease and to leave them for the landowner's benefit after termination of the lease, the condemnor would have to pay the landowner compensation for the improvements.  *Id.* at 849–50, 850–51; *see also United States v. Five Parcels of Land*, 180 F.2d 75, 76–77 (5th Cir. 1950) (distinguishing improvements the condemnor/prior-lessee had a right to remove (no compensation owed) from those improvements the lease contemplated would revert to the landowners after termination (compensation required)).  Here, in contrast, the fact that the grant allowed and required Southwest Transmission to remove the improvements means it owned the improvements and need not pay compensation for those improvements upon condemnation.

¶32        Landowners contend, however, that Southwest Transmission and Mohave Electric became trespassers after expiration of the BLM right-of-way grant and, by failing to pay rent or promptly remove the improvements, forfeited their ownership of the transmission lines and structures.  *See Russell v. Golden Rule Min. Co.*, 63 Ariz. 11, 29–30 (1945) (noting common law rule regarding abandonment of right to remove fixtures by failing to remove such fixtures within a reasonable time).  But Landowners did not demand that Southwest Transmission remove the improvements after the right-of-way grant expired.  And the rule Landowners propose simply does not apply in the same way to an entity with eminent domain authority that constructs improvements to facilitate the public use for which it has the authority to condemn the land, and then in fact exercises its power to condemn the property.  *See, e.g.*, *Anderson-Tully Co. v. United States*, 189 F.2d 192, 197 (5th Cir. 1951); *see also, e.g.*, *Etalook v. Exxon Pipeline Co.*, 831 F.2d 1440, 1444 (9th Cir. 1987); *Ill. Cent. R.R. v. Le Blanc*, 21 So. 760, 762 (Miss. 1897) (collecting cases); *Seattle & Mont. Ry. v. Corbett*, 60 P. 127, 128 (Wash. 1900).  Moreover, the superior court's prior ruling that Southwest Transmission and Mohave Electric were holdover tenants between expiration of the BLM right-of-way grant and the date of the taking and that Landowners are entitled to rental damages for that period ensures that Landowners will receive full compensation for the

12

period over which they now fault Southwest Transmission for failing to pay rent. *See Etalook*, 831 F.2d at 1444.

**¶33**      In short, Southwest Transmission and Mohave Electric retained ownership of the improvements after expiration of the grant, and we thus affirm the superior court's ruling as to ownership of the transmission lines and structures.

### III.    Attorney's Fees on Appeal.

**¶34**      Landowners request an award of attorney's fees on appeal under A.R.S. § 12-341.01.   Without addressing whether Landowners' counterclaim for rental damages renders this condemnation case an "action arising out of a contract" for purposes of § 12-341.01, we decline to award attorney's fees at this time, without prejudice to a request for fees in the superior court if appropriate on remand.

### CONCLUSION

**¶35**      We reverse the superior court's ruling as to valuation date, affirm as to holdover tenancy from expiration of the BLM right-of-way grant through valuation date and Landowners' right to rental damages for that period, affirm as to ownership of improvements, and remand for valuation proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA