489 P.2d 33

**TRANSAMERICA DEVELOPMENT COM-PANY, a California corporation, Appellant,**

**v.**

**The COUNTY OF MARICOPA of the State of Arizona, a body politic, and the Department of Property Valuation of the State of Arizona, Appellees.**

**No. 10334.**

Supreme Court of Arizona, In Division.

Sept. 23, 1971.

Rehearing Denied Oct. 19, 1971.

Murphy, Posner & Franks by Edward C. Voss, III, Phoenix, for appellant.

Beer & Kalyna by Olgerd W. Kalyna, Phoenix, for appellees.

CAMERON, Justice.

This is an appeal from a judgment of the Maricopa County Superior Court which affirmed a decision of the State Board of Tax Appeals fixing the valuation on appellant Transamerica Development Company's

property, a shopping center located in Maricopa County, Arizona. Transamerica also appeals from the denial of its motion for a new trial.

We are called upon to determine whether the property in question was assessed at its actual full cash value for the year 1969, as the Maricopa County Assessor, the State Board of Property Tax Appeals, and the trial judge found to be the case, or whether the assessment was substantially in excess of actual full cash value as Transamerica contends.

The history of this controversy, which concerns the 1969 property taxes of Transamerica, actually begins with the settlement process of Transamerica's 1968 taxes. The original State valuation in 1968 was $1,946,700 for the land, $917,760 for the improvements, and $2,864,460 total. These figures were challenged by Transamerica, so the State brought in an expert appraiser, Mr. Larry Burke, to evaluate the property. Mr. Burke came up with $1,900,000 for the land, $412,500 for the improvements, and $2,312,500 total. Transamerica still protested, and a settlement was finally agreed upon in a June, 1969, proceeding in the Superior Court for Maricopa County. The settlement kept the original State determination for the improvements, $917,-760, dropped the land valuation to $1,247,-780, and totaled $2,165,540.

The following summarizes the three different sets of figures that emerged in the dispute over the 1968 taxes:

| | State | Burke (For the State) | Court Approved |
|---|---|---|---|
| Land | $1,946,700 | $1,900,000 | $1,247,780 |
| Improvements | 917,760 | 412,500 | 917,760 |
| Total | $2,864,460 | $2,312,500 | $2,165,540 |

When assessing Transamerica for 1969, the State did not change the $1,247,780 figure for the land, even though that figure was the result of a compromise and was $700,000 lower than both the State and Burke had originally appraised. The State did, however, increase its assessment of the improvements from the $917,760 figure both the court and it had used in the 1968 assessment to $1,258,385, resulting in a total of $2,506,165.

Since the land figure stayed constant, Transamerica concentrated its objections to the 1969 assessment on the $1,258,385 for improvements. Transamerica retained the State's former expert, Mr. Burke, who produced an appraisal of $1,017,220 for the improvements. (Burke although admitting it was a "most unusual" procedure, assumed the figure $1,247,780 for the land and made no effort to validate that figure.) In December, 1969, the Superior Court for Maricopa County affirmed the decision of the State Board of Property Tax Appeals, in its appraisal of $1,247,780 for land, $1,-258,385 for improvements, and $2,506,165 total. From this determination, Transamerica appeals. The following summarizes the valuations for 1969:

| | State | Burke (for Transamerica Title) | Court |
|---|---|---|---|
| Land | $1,247,780 * | $1,247,780 * | $1,247,780 * |
| Improvements | 1,258,385 | 1,117,220 | 1,258,385 |
| Total | $2,506,165 | $2,365,000 | $2,506,165 |

\* The compromise figure also used for 1968.

Appellant contends that since the value of the land had been agreed to, the question before the State Board and the Superior Court should be limited to determining the actual cash value of the improvements with the total valuation adjusted accordingly. With this we disagree.

The sections that set forth the duties and general procedures of the State Tax Commission—§ 42–103 to § 42–109 A.R.S.; the Department of Property Valuation—§ 42–121 to § 42–129 A.R.S.; the Division of Appraisal and Assessment Standards—§ 42–136 A.R.S.; and the State Board of Property Tax Appeals—§ 42–141 to § 42–147 A.R.S.—all speek solely in terms of *property* valuation and the review of *property* valuation. Similar language is found in § 42–245, subsec A, par. 2 A.R.S.,

which outlines the appeal process to the State Board of Tax Appeals:

"A. Any person dissatisfied with the valuation or classification of his property as fixed by the county board of equalization may appeal in the following manner:

\* \* \* \* \* \*

"2. To the state board of property tax appeals \* \* \*."

§ 42–245.01 A.R.S., which prescribes the procedure for appealing to the Superior Court, is virtually identical:

"Any person dissatisfied with the valuation or classification of his property as determined by the county assessor may, whether or not he files an appeal with the assessor, county board or state board, appeal to the superior court \* \* \*."

The duty of the Superior Court is described in similar terms by § 42–147, subsec. C A.R.S.:

"C. If the court finds that the valuation is excessive, the court shall find the full cash value of the property \* \* \*."

Finally, § 42–312 A.R.S., provides that the tax levy should not be allocated between land and improvements, but:

"A. \* \* \* shall be a lien upon the property assessed."

. These provisions lead us to conclude that the legislature intended that tax boards and reviewing courts should treat property valuation as a single entity, rather than the sum of its two component parts, land and improvements. There is only one provision which would indicate the contrary— § 42–227, subsec. A A.R.S.:

"A. For property tax purposes the valuation of all taxable property shall be determined at its market value. The valuation of land and improvements thereon shall be determined separately.

\* \* \*."

Authorities from jurisdictions with similar statutes overwhelmingly favor the proposition urged by the State in this case: that property valuation must be treated as a single entity. In Pennsylvania, which has an almost identical law, the State Supreme Court has stated:

"Evidence presented by appraisers must be directed to the market value of the property as a whole. The direction of a statute which requires the assessors to show a separate valuation for the land and for the building is not a directive to a court reviewing an assessment on appeal. \* \* \* The thing from which the property owner appeals and, therefore the concern before the court is the total assessment of the property as a unit. The itemization of an assessment required of an assessor separately for the land and for the building is but an intermediate step of the ascertainment of the taxable value of the property as a whole." Appeal of Rieck Ice Cream Co., 417 Pa. 249, 209 A.2d 383, 387 (1965).

See also Casa Loma, Inc. v. Board of Prop. Assess., App. & Rev., 417 Pa. 257, 209 A.2d 387 (1965); McKnight Shop. Center v. Board of Prop. Assess., A. & R., 417 Pa. 234, 209 A.2d 389 (1965); Pittsburgh Miracle Mile Town & Country Shopping Center v. Board of Prop. A., A. & R., 417 Pa. 243, 209 A.2d 394 (1965); and Deitch Company v. Board of Property Assess., App. & Rev., 417 Pa. 213, 209 A.2d 397 (1965).

Similarly, the Supreme Judicial Court of Massachusetts has held:

"Land and buildings upon it are ordinarily parts of the same real estate, and they cannot be separated for the purpose of collecting taxes. They constitute a single estate upon which a single and indivisible tax is levied, and the separate valuation of the buildings is required merely to secure a more specific valuation of what constitutes but one item of real estate. (citations omitted)." Town of Lenox v. Oglesby, 311 Mass. 269, 41 N.E.2d 45, 48 (1942).

See also Paine v. Board of Assessors of Town of Weston, 297 Mass. 173, 7 N.E.2d 584 (1937); and Board of Assessors of

Town of Brookline v. Prudential Ins. Co. of America, 310 Mass. 300, 38 N.E.2d 145 (1941).

We feel that when questioning the reasonableness of property valuation for assessment purposes, property valuation must be considered one subject, not to be broken into separate components of land and improvements. The language of the Arizona statutes—which discuss the valuation of *property*, appellate review of *property* valuation, etc.—indicate that the concern of the Tax Board and the Superior Court should be the reasonableness of the total (land and improvements) valuation placed on the property, rather than the separate valuations. In other words, if the total valuation represents the full cash value of the property, it is immaterial for purposes of appeal that one part is overvalued and the other is undervalued. It is the total value that is the concern of the board and the court.

Neither are we concerned with the fact that the property was valued differently the previous year. While there may be some evidentiary value in previous valuation for the purposes of arriving at full cash value, the assessment must be considered on a year-to-year basis, and the previous year's valuation is not controlling. (See Annotation, Taxes—Res Judicata—Different Periods, 150 A.L.R. 5.)

DID THE COURT FOLLOW THE
PROPER METHOD OF
VALUATION?

The State's valuation of $2,506,165 was attacked as not being a fair appraisal. § 42-147, subsec. B A.R.S. states, "The valuation as approved by the state board shall be presumed to be correct and lawful." See also Navajo County v. Four Corners Pipe Line Company, 106 Ariz. 511, 479 P.2d 174 (1970). An appellate court will not overturn the trial court's judgment unless it is demonstrated to be clearly erroneous. Fought v. Fought, 94 Ariz. 187, 382 P.2d 667 (1963).

In the present case, the board and the court appraised the land at $1,247,780 and the improvements at $1,258,385, for a total of $2,506,165. The evidence as to whether the improvements were correctly appraised is mixed. There is no question that the County Assessor relied solely on the "Replacement Cost New Less Depreciation" (RCNLD) method, despite the clear warning in Bade v. Drachman, 4 Ariz.App. 55, 66, 417 P.2d 689, 700 (1966), that "the ignoring of all factors affecting value other than cost of construction less depreciation or replacement cost less depreciation is a discrimination which may be corrected by legal proceedings when the method results in a substantial deviation from true value * * *." Bade, supra, suggests that other criteria of value, such as income, location, cost, actual cash sale value, etc. should sometimes be considered in determining assessed value. We are concerned with "full cash value" of the property and it follows that there is no method of appraisal that can, in fairness, be applied exclusively in every case. Some property, for example, because of the age of the improvements or the location of the land, might have a cash value equal to the value of the land less the cost of removal of the improvements, while on other properties a thriving business in an isolated part of the community may be more correctly appraised using the income approach.

Transamerica's expert, Mr. Burke, used several different approaches in appraising the improvements. His RCNLD total was less than the State's, but as he admitted "the cost estimates are reasonably close to each other." Burke then used the income approach (in which he assumed but didn't calculate a land value of $1,247,780) and produced an improvements figure a good deal less than the State's. Burke finally appraised the land and improvements together by the market approach and came up with totals remarkably close to the State's. He concluded by presenting a figure for improvements based on an unspecified combination of all three ap-

proaches. This figure was $1,117,220, as compared to the State's $1,258,385.

 Although the use of only one method of determining actual cash value can be error, the petitioner still has the burden of showing the method used resulted in an erroneous valuation. It is not our function to ascertain the exact valuation of land and improvements. It is our function to determine if the total appraisal was fair, with presumptions in favor of both the appraisal, § 42-147, subsec. B A.R.S. and Navajo County v. Four Corners Pipe Line Company, supra, and the trial court's upholding of that appraisal. Fought v. Fought, supra. We believe the evidence supported the trial court's judgment in affirming the appraisal. The evidence indicates the land was undervalued and, therefore, even if the State erred in overvaluing the improvements by a slight amount, this overvaluation was certainly canceled by an undervaluation of the land.

Judgment affirmed.

HAYS, V. C. J., and JESSE A. UDALL, J., concur.