537 P.2d 924

**SECURITY PROPERTIES, a corporation, Lillian Murdock Cece, a married woman dealing with her sole and separate property, Adams N. Nickerson, and George Waterman, III, Appellants,**

v.

**ARIZONA DEPARTMENT OF PROPERTY VALUATION, Arlo Woolery, Director of Arizona Department of Property Valuation, Maricopa County Board of Supervisors, B. W. Burns, Bob Stark, and Henry Haws, as members of the Maricopa County Board of Supervisors, Kenneth R. Kunes, Maricopa County Tax Assessor, and Leo A. Benedict, Maricopa County Treasurer, Appellees.**

**No. 11693.**

Supreme Court of Arizona,

In Banc.

July 15, 1975.

Gust, Rosenfeld & Divelbess by Robert T. Murphy, Norman C. Storey, Phoenix, for appellants.

Beer & Kalyna by Olgerd W. Kalyna, Phoenix, for appellees.

STRUCKMEYER, Vice Chief Justice.

This is an action in which the appellants, plaintiffs below, as taxpayers, pursuant to A.R.S. § 42–204, filed a complaint in the Superior Court against the Arizona Department of Property Valuation and others, seeking a refund of real property taxes paid under protest. From a judgment of the Superior Court of Maricopa County denying any relief, they have appealed. Judgment affirmed.

Appellants urge that their properties were not uniformly assessed by the Maricopa County Assessor as compared with the same type and class, the class being commercial, of properties of others for the year 1969; that this produced discriminatory inequality of assessment of their properties as compared with the assessments of other property of the same type and class and that this was done intentionally, systematically and deliberately in violation of Article IX, § 1, of the Constitution of the State of Arizona, A.R.S. and the Fourteenth Amendment of the Constitution of the United States.

In 1963, following our decision in Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963), in which we took judicial notice that there was consistent and systematic undervaluation of property from county to county and from classification to classification, legislation was enacted requiring a reappraisal of all property at full cash value within the State. This reappraisal was conducted by the Bureau of Appraisal Standards, and thereafter the appraisals were turned over to the county assessors of each county for use in establishing a reappraisal program designed to keep all property in each county appraised at its current value. All property in Maricopa County was reappraised during this program and turned over to the Maricopa County Assessor to be used for the taxable year of 1968. In 1969, the Maricopa County Assessor and the Department of Property Valuation attempted to formulate a workable program to continually update all property located within the county to its full cash value to the end that property valuations would be kept current.

After the receipt of their tax statements for the year 1968, a number of high-rise building owners questioned the level of evaluation of other high-rise properties located within Maricopa County. High-rise buildings are those over four and five stories in height. As a result, in 1969 the State Department of Property Valuation and the Maricopa County Assessor reappraised high-rise structures and the non high-rise buildings adjacent to them under common ownership. A total of 28 or 29 of these structures were reviewed for the purpose of placing their proper values on the 1970 tax rolls. High-rise buildings were not, however, the only properties reappraised. In addition, other properties, gas stations and golf courses, with particular assessment problems were reviewed as a group, and some shopping centers, extensive areas of farm lands, speculative desert lands and certain residential areas were reviewed in part.

The general level of increases in appraised valuation of high-rise buildings with their adjacent low-rise buildings held in common ownership as a result of the reappraisals of 1969 averaged 25% to 30%

over previous appraised values. The evidence construed in the light most favorable to appellees indicates that appellants' properties were corrected in value in order to bring them in line with other properties within the class of high-rise structures and with the legislative mandate of full cash value. While the evidence established there were problems with other properties besides high-rise property, it was not until 1970, after a cyclic reevaluation study, that it was determined that commercial properties as a class were found to be 30% to 50% less than full cash value.

The assessed valuations of nearly all of the properties which are the subject matter of this litigation were appealed in 1968 under A.R.S. § 42–204 to the County Board of Supervisors sitting as a board of equalization, and from there to the Board of Tax Appeals, with the result that valuations were reduced in substantial amounts. There is in this litigation no challenge to the correctness of the valuations as finally fixed by those bodies.

The appellants submit three questions, of which the answer to their question No. 2 is dispositive of this appeal. They urge that the selective reappraisal of all high-rise buildings within the county and all low-rise buildings located adjacent thereto and under common ownership is a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and the Uniformity Clause contained in Article IX, § 1, of the Arizona Constitution. The appellees urge that the evidence presented to the court viewed in a light most favorable to the prevailing party was not sufficient to raise the question of constitutionality of the assessment.

By A.R.S. § 42–221(B), each county assessor on January 1 of each year is required to determine all property in his county subject to taxation. He shall also determine the full cash value of all such property and list such property with the valuation found for use on the tax roll. It is apparent from § 42–221(B), since the full cash value of all property shall be determined yearly, the statute contemplates that valuations may change from time to time and that the county assessors are directed to make these changes yearly as circumstances demand.

We do not construe § 42–221(B) as requiring a county assessor to reevaluate every parcel of property in the county by a personal and physical examination. Such determination of full cash value can be made, for example, by consideration of previous physical examination with appropriate adjustments for such items as inflation, depreciation and the like. We said in Transamerica Development Co. v. County of Maricopa, 107 Ariz. 396, 489 P.2d 33 (1971):

"While there may be some evidentiary value in previous valuation for the purposes of arriving at full cash value, the assessment must be considered on a year-to-year basis, and the previous year's valuation is not controlling." 107 Ariz. at 399, 489 P.2d at 36.

Neither the change in value of a particular parcel of property nor the total changes in assessments considered in the aggregate raise any question as to the legality of the assessment. There must be more.

The County Assessor testified:

"Q. Do you think the high rise buildings were more undervalued than the low rise buildings along Central Avenue [in Phoenix, Arizona]?

A. I think so.

*     *     *     *     *     *

Q. But you think high rises were off to a greater extent?

A. Yes, sir."

He further testified that "[i]n 1969 we were attempting to correct errors.", meaning the errors which had occurred in the statewide reevaluation program which took place in the years 1964 through 1967.

In McCluskey v. Sparks, 80 Ariz. 15, 291 P.2d 791 (1955), we said that to

place the county assessor's conduct in the category of an unconstitutional assessment there must be more than a dispute between the taxpayers and the taxing officials as to valuations placed upon properties and that before a court will interfere, it must be clearly shown that assessments which are unequal are the result of systematic and intentional conduct—in the sense that the inequality would thereby be deliberately created. The annotator in 76 A.L.R.2d at 1077, Incomplete Equalization Program, pointed out:

"* * * if one is to give full faith and credit to certain expressions encountered in the cases, the question of violation of constitutional right is largely one of the presence or absence of actual intent to discriminate, despite the fact of substantial, and in some instances great, inequality in taxation necessarily resulting from only partial application of new values."

█ In the instant case, it was not known that the assessments of commercial properties, that is, high-rise and low-rise rental properties, were both below the legislative mandate of full cash value at the time of the reassessment of high-rise properties in 1969. The reevaluation of high-rise properties was undertaken as stated because of the acknowledged discrepancies in their individual valuations.

Appellants did not establish a systematic, intentional discrimination and there was, accordingly, no question presented as to the unconstitutionality of the assessment. Transamerica Development Co. v. County of Maricopa, *supra*; Navajo County v. Four Corners Pipeline Co., 106 Ariz. 511, 479 P.2d 174 (1970); McCluskey v. Sparks, *supra*. And *see* Burns v. Herberger, 17 Ariz.App. 462, 498 P.2d 536 (1972).

Judgment of the court below is affirmed.

CAMERON, C. J., and LOCKWOOD, HAYS and HOLOHAN, JJ., concur.