859 P.2d 1323

**CALMAT OF ARIZONA, an Arizona corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**STATE of Arizona ex rel. Charles L. MILLER, Director of Transportation, Defendant–Appellee, Cross–Appellant.**

**No. CV–92–0173–PR.**

Supreme Court of Arizona, En Banc.

Sept. 16, 1993.

Grant Woods, Atty. Gen. by Joe Acosta, Jr., Asst. Atty. Gen., Phoenix, for defendant/appellee/cross-appellant.

Snell & Wilmer by Lonnie J. Williams, Jr. and Jeffrey Messing, Phoenix, for plaintiff/appellant/cross-appellee.

## OPINION

CORCORAN, Justice.

This case arises from two separate condemnation proceedings, consolidated for trial, between the State of Arizona and Calmat of Arizona. We granted the state's cross-petition for review under rule 23, Arizona Rules of Civil Appellate Procedure, regarding one of these proceedings. The relevant proceeding involves the state's appropriation of 2 parcels of Calmat's land near Interstate 10 (I–10) and 24th Street in Phoenix. The issue is:

> Where physical entry precedes the filing of a summons in an inverse condemnation case, should the date of valuation be the date of the physical entry or the later date that the summons is filed and the legal proceedings instituted?

We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.-24.

### FACTUAL AND PROCEDURAL BACKGROUND

Calmat's inverse condemnation action stems from the state's efforts to acquire its property. The state, planning to widen an I–10 bridge, filed a condemnation action in Superior Court (C–557965) on October 11, 1985. In December 1985, the state posted a bond, obtained an order of immediate possession, and erected permanent structures on the property, but took no further action to bring the case to trial. On November 5, 1986, the condemnation action was dismissed for failure to prosecute. The state filed a motion to reinstate its condemnation action on August 7, 1987, and the motion was denied on September 11, 1987. No appeal was taken.

In late June 1987, Calmat filed an inverse condemnation action (CV 87–17569) seeking compensation for its property. Calmat argued, in a motion in limine, that the property should be valued as of the summons' date in the inverse condemnation action. Calmat relied on A.R.S. § 12–1123(A), which provides:

> For the purpose of assessing compensation and damages, the right to compensation and damages shall be deemed to accrue at the *date of the summons*, and its actual value at that date shall be the measure of compensation and damages.

(Emphasis added.)

The state argued that § 12–1123(A) was a direct condemnation statute and did not apply to an inverse condemnation action. It therefore contended that the property should be valued as of the date the state entered the property. The trial court ruled

that § 12–1123, a general condemnation statute, presumptively applied to inverse condemnation actions and set the valuation date as of June 25, 1987, the summons' date in the inverse condemnation action.

The jury's verdict awarded Calmat $1,646,560 for the parcel located along I–10 and $55,625 for the adjoining parcel located in the river bottom. The parties also stipulated that Calmat would receive $546,000 in damages for its lost ability to lease two commercial billboards.

In reviewing the form of judgment to be entered and the objections, the trial court *sua sponte* questioned the propriety of its own ruling requiring the property to be valued as of the June 1987 summons' date. The court stated:

> Having now seen the evidence, and now having a better sense of the extent of the windfall [to Calmat], the Court has serious doubts about the correctness and the justness of that later [June 1987] valuation date. The Court will expect to consider this matter in more detail after full briefing and argument on a Motion for New Trial that includes this issue.

The court later granted the state's motion for a new trial. The court found that when it granted Calmat's request for the June 1987 valuation date, it had mistakenly assumed Calmat was waiving any claim to back interest or rent. The court determined that Calmat was entitled to interest pursuant to § 12–1123(B), which provides:

> If an order is made letting the plaintiff into possession prior to final judgment, the compensation and damages awarded shall draw legal interest from the date ... the order [is entered by the court]....

The court explained that had it realized that Calmat was seeking not only the 1987 valuation date but also interest on the 1987 valuation retroactive to 1985, it would have denied Calmat's request because of the windfall Calmat would receive. The court ruled:

> [T]he [June] 1987 valuation date as it was given to the jury was wrong for both parties. The State was stuck with

an artificial and later valuation date in a rising and improving real estate market and Calmat was deprived of back interest or back rent for the time between possession and the artificial valuation date. These two wrongs do not make a right, or a fair trial..... The error as to the State cannot be corrected without the grant of a New Trial.

Calmat appealed. The court of appeals determined that Arizona courts have consistently held that Arizona's direct condemnation statutes apply to inverse condemnation actions. *Calmat of Arizona v. State ex rel. Miller*, 172 Ariz. 300, 308, 836 P.2d 1010, 1018 (App.1992). It therefore held that the trial court's initial ruling had correctly fixed the property's value as of June 1987, the summons' date in the inverse condemnation action, and that the trial court had erroneously granted the state's motion for a new trial on the valuation issue. 172 Ariz. at 308–09, 836 P.2d at 1018–19. We disagree and find the property's value should be fixed as of December 1985, the date of the state's original entry.

## DISCUSSION

■ The Arizona Legislature has enacted a statutory scheme designed to facilitate direct condemnation actions by condemning agencies. A.R.S. §§ 12–1111, *et seq.* The legislature, however, has not specifically addressed inverse condemnation actions by property owners; that authority stems directly from Ariz. Const. art. 2, § 17, which provides that private property shall not be taken without just compensation. *State v. Hollis*, 93 Ariz. 200, 203, 379 P.2d 750, 751 (1963); *Pima County v. Bilby*, 87 Ariz. 366, 370, 351 P.2d 647, 649 (1960). This constitutional provision is self-executing. *Mohave County v. Chamberlin*, 78 Ariz. 422, 429–30, 281 P.2d 128, 133 (1955). An injured party must therefore be compensated, even though no specific statutory procedure governs this recovery. *Chamberlin*, 78 Ariz. at 429–30, 281 P.2d at 132–33.

We held in *Desert Waters, Inc. v. Superior Court* that a property owner does not have the constitutional right to have his or her compensation fixed as of a particular

date, and that "the legislature may establish some convenient time, as of which the value of the property will be assessed and the amount of compensation fixed." 91 Ariz. 163, 173, 370 P.2d 652, 659 (1962). In a direct condemnation action, the legislature has expressly set the valuation date as of the summons' date. *See* A.R.S. § 12–1123(A). The court of appeals, relying predominately on *Hollis* and *Salaz v. City of Tucson,* 157 Ariz. 251, 756 P.2d 348 (App. 1988), determined that the direct condemnation statutes applied to all aspects of an inverse condemnation action. *Calmat,* 172 Ariz. at 308–09, 836 P.2d at 1018–19. It therefore held that the valuation date in an inverse condemnation action should also be the summons' date. *Calmat,* 172 Ariz. at 309, 836 P.2d at 1019. In so holding, the court of appeals expanded our holding in *Hollis* and misplaced its reliance on *Salaz.*

In *Hollis,* we held that the statutory provision governing *venue* in a direct condemnation action also applied to an inverse condemnation action. 93 Ariz. at 203, 379 P.2d at 751. We stated:

> That the landowner, in default of proper condemnation action by the State, must himself institute proceedings to secure compensation does not change the essential nature of the cause of action. It is still in the nature of a condemnation of a private property right by the State under the sovereign right of eminent domain.

93 Ariz. at 203, 379 P.2d at 751. Thus, we recognized the similarities between direct and inverse condemnation actions and determined that in the *specific area of venue,* which involves a purely procedural matter, the direct condemnation statute logically applied. *Hollis,* however, does not stand for the proposition that the direct condemnation statutes apply to all aspects of an inverse condemnation action.

*Salaz,* which relied on *Hollis,* held that a plaintiff is not entitled to *attorneys' fees* in an inverse condemnation action where the direct condemnation statute does not provide for such a recovery. 157 Ariz. at 253, 756 P.2d at 350. The court of appeals in *Salaz* expanded *Hollis* well beyond its holding when it stated in dicta that "[a]n

inverse condemnation action is governed by the same statutes as a direct condemnation action." *Salaz,* 157 Ariz. at 253, 756 P.2d at 350.

■ We do not believe, however, that the legislature intended the wholesale application of direct condemnation statutes to inverse condemnation actions. To determine legislative intent, we first review the statute's language. *Kriz v. Buckeye Petroleum Co.,* 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). The eminent domain valuation statute specifically addresses only direct condemnation actions and is silent regarding inverse condemnation actions. Thus, we must look beyond the statutory language and consider the statute's effects and consequences, as well as its spirit and purpose. *Kriz,* 145 Ariz. at 377, 701 P.2d at 1185.

■ Eminent domain is the sovereign right of the state to appropriate private land for the public good, subject to the constitutional limitation that the property owner is justly compensated. *See City of Scottsdale v. Municipal Court,* 90 Ariz. 393, 396, 368 P.2d 637, 638–39 (1962). We stated in *State ex rel. Miller v. Filler* that "[t]he purpose of just compensation is to place the property owner in the position he or she would have occupied had no taking occurred." 168 Ariz. 147, 149, 812 P.2d 620, 622 (1991). The valuation statute fulfills this purpose in a direct condemnation action because the property is valued at a point close in time to the actual taking. Applying this statute to an inverse condemnation action, however, does not achieve this same effect due to the timing differences inherent between the two types of condemnation actions.

Section 12–1123(A), which fixes the property's valuation as of the summons' date in a direct condemnation action, contemplates an orderly taking of property whereby the condemning agency first files a complaint in condemnation and then seeks a court order to obtain immediate possession. *See* A.R.S. § 12–1116(A). The legislature's decision to value the property as of the summons' date in a direct condemnation action

is logical because "the commencement of the proceedings ... may be fairly said to represent the date of taking." *Maxey v. Redevelopment Authority,* 94 Wis.2d 375, 288 N.W.2d 794, 804 (1980); *see also Gardiner v. Henderson,* 103 Ariz. 420, 425, 443 P.2d 416, 421 (1968).

In contrast, the summons' date in an inverse condemnation action bears no relation to the date of the taking. When an inverse condemnation action is filed, the condemning agency, by definition, has already taken the condemnee's property. *See Maxey,* 288 N.W.2d at 804. The filing of the action and the accompanying summons' date may occur years after the state has entered and appropriated a condemnee's property. For example, in the present case, the state appropriated Calmat's property in December 1985. Calmat did not file its inverse condemnation action, however, until June 1987. A mechanical application of the valuation statute to an inverse condemnation action ignores the significant timing difference between direct and inverse condemnation actions.

Timing is critical to valuation because it affects the fairness of the compensation when property values fluctuate between the date of the condemnor's entry and the summons' date. In *United States v. Dow,* the government entered into possession of an easement 3 years before filing a declaration of taking. 357 U.S. 17, 18, 78 S.Ct. 1039, 1042, 2 L.Ed.2d 1109 (1958). The applicable federal statute provided that the property was to be valued as of the date of the declaration of the taking, but was silent regarding the date to be applied when the government entered into possession before the filing of the taking. *Dow,* 357 U.S. at 22–23, 78 S.Ct. at 1044–45. The Court held that a taking occurred for all purposes as of the date of the government's entry, and determined that the property should be valued as of this date. *Dow,* 357 U.S. at 23–24, 78 S.Ct. at 1045. It reasoned that valuing the property as of the date the declaration was filed would lead to anomalous results. *Dow,* 357 U.S. at 24, 78 S.Ct. at 1045. The court stated:

> [I]f the value of the property changed between the time the Government took possession and the time of filing, payment as of the latter date would not be an accurate reflection of the value of what the property owner gave up and the Government acquired.

*Dow,* 357 U.S. at 24, 78 S.Ct. at 1045.

The application of § 12–1123(B), which governs the interest awarded a condemnee, would further affect the fairness of the resulting compensation. Section 12–1123(B) provides that if a court order grants the condemning agency possession of the property before a final judgment, the property owner is entitled to interest on the property's value running from the date of the possession order to the date of the final judgment. In an inverse condemnation action, the condemning agency does not receive a court order to obtain possession of the property; it simply enters and appropriates the condemnee's property. As a result, according to its express terms, § 12–1123(B) cannot be applied to an inverse condemnation action. The court of appeals, nevertheless, held that § 12–1123(B) applied to an inverse condemnation action and determined that the interest would accrue from the date of actual possession, rather than from the date of the possession order as mandated by the statute. *Calmat,* 172 Ariz. at 309, 836 P.2d at 1019.

If § 12–1123(B) is applied to an inverse condemnation action in conjunction with § 12–1123(A), the property owner will either be over- or undercompensated, depending on whether the value of the property increases or decreases between the date of entry and the later summons' date. As the trial court recognized in the present case, the property owner would receive a windfall in a rising real estate market. In addition to receiving the appreciated value of the property as of the summons' date, the property owner would then be entitled to interest on this inflated value retroactive to the date of entry. A declining real estate market, on the other hand, may lead to undercompensation. In a declining market, the property owner would receive the de-

pressed value of the property as of the summons' date, despite the fact that the property had a higher value at the time the condemning agency wrongfully entered and appropriated the property. If § 12–1123(B) is applied, interest would accrue from the date of entry, but the interest calculation would be tied to the property's deflated value as of the summons' date. As a result, the property owner would be penalized twice: once in the valuation of the property and a second time in calculating the interest.

Based on the timing difference between inverse and direct condemnation actions and its effect on the resulting compensation, we conclude that the legislature could not have intended for the direct condemnation valuation statute to apply to inverse condemnation actions. The spirit and purpose behind the law of eminent domain mandates that the property be valued as of the date of the taking. In *Gardiner*, we stated:

> The immediate taking of possession of property by a municipality is a taking of property. Possession is certainly one of the greatest attributes of ownership of property. The possessor exercises dominion over the property, and a condemnor, be it municipality or private corporation thereafter denies the owner of its usage, its rental value, and its enjoyment.

103 Ariz. at 424, 443 P.2d at 420. Because the taking of possession constitutes the "taking" of property, we hold that the date of valuation in an inverse condemnation action should be set as of the date of entry.

In setting the valuation date as of the date of entry in an inverse condemnation case, the Oregon Supreme Court observed:

> [I]f a ... court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand whilst they apply the axe with the other; ... [fixing damages as of the date of the taking provides a rule that is] certain and practical, and tends to prevent litigation, being a rule which parties may apply for themselves, and which, in most cases,

will be the nearest approximation to doing particular justice.

*State ex rel. Highway Comm'n v. Stumbo*, 222 Or. 62, 352 P.2d 478, 484 (1960), quoting *Parks v. City of Boston*, 15 Pick. 198, 32 Mass. 198 (1834). The court also recognized that setting the valuation date as of the date of entry would advance certain policy objectives. The court noted:

> If damages are assessed at the time of the trespass, they are ascertained at a fixed rather than a shifting date. There will be no motive on either side to drag out negotiations in the hope of a favorable moment to demand condemnation; and settlement of claims rather than litigation will be encouraged.

*Stumbo*, 352 P.2d at 483.

The one weakness the *Stumbo* court attributed to valuing the property as of the date of entry was that the property owner would be deprived of the reasonable rental value of the land for the period of the state's wrongful occupation. *Stumbo*, 352 P.2d at 483. The court rectified this problem by holding that a property owner would be entitled to interest on the property's value measured from the date of entry. *Stumbo*, 352 P.2d at 483. This determination is consistent with United States Supreme Court's holding in *Seaboard Air Line Ry. v. United States*, where the Court held that a property owner is entitled to interest running from the date of the government's entry where the government takes possession before ascertaining or paying compensation. 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923); *see also Desert Waters*, 91 Ariz. at 174, 370 P.2d at 659.

To ensure that the taking and resulting compensation is determined as of one fixed date, we also hold that interest shall accrue on this valuation as of the date of entry. The damage formula for inverse condemnation actions, therefore, adopts the date of the government's entry as the date of valuation, subject only to those exceptions necessary to comply with the constitutional guarantee of just compensation. *See, e.g., Filler*, 168 Ariz. at 150–51, 812

P.2d at 623–24 (construction delays can affect market value); *Uvodich v. Board of Regents*, 9 Ariz.App. 400, 406, 453 P.2d 229, 235 (1969) (decline in value due to pretaking government action). Interest, of course, runs from the date of taking.

## DISPOSITION

 In granting the state's motion for a new trial, the trial court correctly determined that it had mistakenly instructed the jury to value the property as of June 1987, the summons' date in the inverse condemnation action, rather than December 1985, the date of the state's entry. We therefore affirm the trial court's ruling that the state is entitled to a new trial utilizing 1985 property values and vacate that portion of the court of appeals' decision reversing that ruling.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET and MARTONE, JJ., concur.