236 P.3d 1209

**SWIFT TRANSPORTATION CO., INC., a corporation, Plaintiff/Appellant,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, Defendant/Appellee.**

No. 1 CA–TX 09–0002.

Court of Appeals of Arizona, Division 1, Department T.

Aug. 10, 2010.

Donald P. Roelke, Phoenix, Attorney for Plaintiff/Appellant.

Richard M. Romley, Maricopa County Attorney by Steven B. Palmer, Deputy County Attorney, Division of County Counsel/Civil Division, Law Office of Jerry A. Fries by Jerry A. Fries, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

OROZCO, Judge.

¶ 1 Swift Transportation Company, Inc., (Taxpayer) appeals from the tax court's judgment holding that Maricopa County did not violate Arizona Revised Statutes (A.R.S.) section 42–15105 (2006)[1] in revaluing Taxpayer's property for the 2007 tax year. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**The Initial Assessment**

¶ 2 The Maricopa County Assessor (the Assessor) values real property at full cash value. A.R.S. § 42–13051.B.2 (Supp.2009).[2] For property tax purposes, "full cash value" means "the value determined as prescribed by statute. If no statutory method is prescribed, full cash value is synonymous with

market value which means the estimate of value that is derived annually by using standard appraisal methods and techniques." A.R.S. § 42–11001.6 (Supp.2009). In Arizona, valuation increases are limited to the "limited property value." A.R.S. § 42–13301.A (Supp.2009). In the following cases, limited property value is based on a percentage or a level of the property's full cash value comparable to that of other similarly situated properties: erroneously omitted land or improvements from the preceding tax year; changes in use since the preceding tax year; modification through construction, destruction or demolition since the preceding valuation year; or splits, subdivisions or consolidations between January 1 through September 30 of the valuation year. A.R.S. § 42–13302.-A.1–4 (Supp.2009).

¶ 3 Real property in Arizona is valued in "the calendar year preceding the year in which the taxes are levied." A.R.S. § 42–11001.19(a) (Supp.2009). In February 2006, the Assessor issued Taxpayer a notice of valuation for the 2007 tax year for Taxpayer's property. At the time, the relevant property consisted of four separate parcels: Parcel Nos. 104–34–001E (Parcel E), 104–34–001H (Parcel H), 104–34–001L (Parcel L) and a portion of 104–34–001M (Parcel M).

¶ 4 The Assessor initially assessed Parcels E and H at a combined value of $26,842,465 for the 2007 tax year.[3] Parcels L and M were assessed at a combined value of $15,567 for the 2007 tax year.[4] Taxpayer administratively appealed the 2007 initial valuations for Parcels E and H to the Assessor and the State Board of Equalization (the Board). The initial valuations were upheld.

---

1. In 2009, the Arizona Legislature amended A.R.S. § 42–15105 to add "or legal classification" after the references to "valuation." 2009 Ariz. Sess. Laws, ch. 33, § 7 (1st Reg. Sess.). The 2009 amendment is not material to this opinion. We cite the 2006 version, the version in effect at the time Taxpayer's property was revalued.

2. Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this opinion have since occurred.

3. Parcel E was assessed at a full cash value of $20,500 (based upon .23 acres of land for commercial use). Parcel H was assessed at a full cash value of $26,821,965 (based upon $23,373,840 in improvements and $3,448,125 for 99.316 acres of land for commercial use).

4. Parcel L was assessed at a full cash value of $2320 (based upon .252 acres of land for miscellaneous commercial use). Parcel M was assessed at a full cash value of $13,347 (based upon 44.61 acres of land for agricultural use).

### The Combination/Split

¶ 5 On May 17, 2005, Taxpayer altered all of the parcels' boundaries by executing and recording a special warranty deed. On May 24, 2005, the Assessor initiated a combination/split of Parcels E, H, L and M. On May 30, 2006, the Assessor completed the combination/split, creating Parcel No. 104–34–001N (the Property).[5] The portion of the Property that had been Parcel M, changed from agricultural use to commercial use and 16.14 acres were added to former Parcel H.[6] After the combination/split, the Property consisted of 115.73 acres of land for commercial use.

¶ 6 While the combination/split process was pending, Taxpayer also added improvements to former Parcel H. Construction was completed on Parcel H on October 21, 2005. The improvements included a new 141,000 square-foot parking garage and additional asphalt covering about twenty-six acres. As a result of the combination/split, the improvement value previously attributed to Parcel H was allocated to the Property.

### The Supplemental Notice Of Change

¶ 7 In September 2006, the Assessor sent Taxpayer a supplemental notice of change (the Supplemental Notice) for the Property pursuant to A.R.S. § 42–15105. Based on the Supplemental Notice, the Property was assessed at a full cash value of $46,405,365 and a limited property value of $38,516,453.

¶ 8 Taxpayer appealed the supplemental valuation of the Property to the Board. After a hearing, the Board reduced the Property's full cash value to $44,829,308 and reduced the limited property value to $37,208,326. The Board, however, upheld the improvement value of $36,410,865.

### This Litigation

¶ 9 On December 15, 2006, Taxpayer filed a complaint seeking a reduction in the valuation in tax court against Maricopa County pursuant to A.R.S. § 42–16201.A (2006), alleging that the Assessor's valuation was "excessive and/or illegal." In April 2007, Taxpayer amended its original complaint and sought to recover a portion of its tax payment pursuant to A.R.S. § 42–11005.A (2006). According to Taxpayer, the supplemental valuation was "illegal, discriminatory, nonuniform and erroneous" and Taxpayer was entitled to a correction and partial refund of the taxes it paid for the 2007 tax year.

¶ 10 The Assessor denied the allegations and alleged that it had properly employed standard appraisal techniques to determine the Property's full cash value and limited cash value. The parties subsequently filed cross-motions for summary judgment. Taxpayer argued that A.R.S. § 42–15105 limits a supplemental valuation to the change or addition triggering the supplemental valuation and does not permit a revaluation of the unchanged property. After briefing and oral argument, the tax court granted summary judgment to the Assessor. Taxpayer filed a timely notice of appeal and we have jurisdiction pursuant to A.R.S. §§ 12–120.21.A.1 and –2101.B (2003).

### DISCUSSION

#### Supplemental Valuations Pursuant to A.R.S. § 42–15105

¶ 11 We review de novo the grant of summary judgment. *Wilderness World, Inc. v. Ariz. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). "Interpretation of a statute is a question of law, and we are not bound by [the tax court's] construction."

---

5. Another parcel was also created, but is not the subject of this appeal. The combination/split was effective for valuation and tax purposes for the 2007 tax year, because the Assessor concluded its process on May 30, 2006. *See* A.R.S. § 42–13302.A.4; *Premiere RV & Mini Storage LLC v. Maricopa County,* 222 Ariz. 440, 445–46, ¶¶ 20–24, 215 P.3d 1121, 1126–27 (App.2009) (holding that, for property tax purposes, a split occurs when an assessor completes the process of identifying and valuing the resulting parcels).

6. Although both parties suggest Parcel L changed from agricultural use to commercial use as a result of the combination/split, the record indicates this parcel was actually assessed as miscellaneous commercial use prior to the combination/split. As a result, there was no change in use regarding Parcel L.

*Turf Paradise, Inc. v. Maricopa County,* 179 Ariz. 337, 340, 878 P.2d 1375, 1378 (App. 1994). We construe related statutes in the context of the statutory scheme and strive to achieve consistency among them. *Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 494, ¶ 18, 984 P.2d 574, 580 (App. 1999).

¶ 12 Section 42–15105 provides:

**Supplemental notice and appeal of valuation in case of new construction, changes to assessment parcels and changes in use**

For property that is valued by the assessor, in the case of new construction, additions to, deletions from or splits or consolidations of assessment parcels and changes in property use that occur after September 30 of the preceding year and before October 1 of the valuation year:

1. The assessor shall notify the owner of the property of any change in the valuation on or before September 30 of the valuation year.

2. Within twenty-five days after the date of the assessor's notice, the property owner may appeal the valuation to the state board of equalization if the property is located in a county with a population of five hundred thousand persons or more or to the county board of equalization if the property is located in any other county.

¶ 13 Taxpayer and the Assessor agree that the Assessor issued a timely supplemental notice of change in the Property's valuation. Additionally, both agree that a valuation must use standard appraisal methods and techniques, and that the cost method applied here was appropriate. The parties disagree, however, regarding whether A.R.S. § 42–15105 limits the Assessor's authority to value only the incremental changes to the Property, or whether the Assessor may revalue the entire Property as a unit for purposes of the Supplemental Notice.

¶ 14 Our primary task is to ascertain and give effect to the legislature's intent in drafting A.R.S. § 42–15105. *See Mail Boxes, Etc., U.S.A. v. Indus. Comm'n of Ariz.,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We look first to the statute's language and will

apply the usual and commonly understood meaning in the absence of a clear legislative intent to attribute a different meaning to a term. *Calmat of Ariz. v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993); *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). If the intent is still unclear, we may employ rules of statutory construction. *See Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993) (explaining that no construction is necessary when a statute's meaning is plain and unambiguous).

¶ 15 Section 42–15105.1 directs the Assessor to notify a property owner "of any change in the valuation." The relevant statutory scheme defines the term "valuation" as "the full cash value or limited property value that is determined for real or personal property, as applicable." A.R.S. § 42–11001.15. It has also been defined as "the final value placed upon a piece of property by the taxing authority." *Aileen H. Char Life Interest v. Maricopa County,* 208 Ariz. 286, 295 n. 8, ¶ 25, 93 P.3d 486, 495 n. 8 (2004). These definitions do not expressly limit the valuation to specific components, but do not definitively resolve the question either.

¶ 16 Taxpayer contends that because A.R.S. § 42–15105's heading uses the term "supplemental," the valuation must also be "supplemental." Statutory titles provide guidance in interpreting statutes, but are not law. *See Pleak v. Entrada Prop. Owners' Ass'n,* 205 Ariz. 471, 474, ¶ 7, 73 P.3d 602, 605 (App.2003). The term "supplemental" does not appear in the statute's main text. Although "supplemental" modifies the term "notice" in the heading, the text of the statute gives no indication that the valuation itself must be "supplemental."

¶ 17 Accordingly, A.R.S. § 42–15105 is silent as to how the Assessor must conduct the valuation. "When a statute is silent regarding an issue 'we must look beyond the statutory language and consider the statute's effects and consequences, as well as its spirit and purpose.'" *Thompson v. Thompson,* 217 Ariz. 524, 527, ¶ 13, 176 P.3d 722, 725 (App. 2008) (quoting *Calmat of Ariz.,* 176 Ariz. at 193, 859 P.2d at 1326). According to Taxpayer, we should construe A.R.S. § 42–15105 to

exclude use of the unitary theory of valuation [7] in the supplemental notice context.

¶ 18 The Arizona Supreme Court rejected a similarly limited view of an assessor's authority in *Transamerica Development Co. v. Maricopa County*, 107 Ariz. 396, 489 P.2d 33 (1971). In *Transamerica Development Co.*, the taxpayer disputed the assessor's valuation of its shopping center for the 1968 tax year. *Id.* at 397, 489 P.2d at 34. The assessor initially valued the land at $1,946,700 and the improvements at $917,760. *Id.* An appraiser later valued the land at $1,900,000 and the improvements at $412,500; the parties ultimately settled on a land value of $1,247,780 with the value of the improvements remaining at $917,760. *Id.*

¶ 19 For the next tax year, 1969, the assessor maintained the land value but increased the improvement value to $1,258,385, resulting in an overall value of $2,506,165. *Id.* The taxpayer challenged this figure, hired the appraiser who conducted the previous valuation, and instructed the appraiser to value *only* the improvements. *Id.* The appraiser stated that this was a "most unusual" procedure to assume the validity of the $1,247,780 land value. *Id.*

¶ 20 After surveying Arizona statutes on full cash value, the Arizona Supreme Court approved the government's valuation for the 1969 tax year. *Id.* at 398, 400, 489 P.2d at 35, 37. It noted that "[a]uthorities from jurisdictions with similar statutes overwhelmingly favor the proposition urged by the State in this case: that property valuation must be treated as a single entity." *Id.* at 398, 489 P.2d at 35. Our supreme court explained:

> [W]hen questioning the reasonableness of property valuation for assessment purposes, property valuation must be considered one subject, not to be broken into separate components of land and improvements. The language of the Arizona statutes—which discuss the valuation of Property, appellate review of Property valuation, etc.—indicate that the concern of the Tax Board and the Superior Court

should be the reasonableness of the total (land and improvements) valuation placed on the property, rather than the separate valuations. In other words, if the total valuation represents the full cash value of the property, it is immaterial for purposes of appeal that one part is overvalued and the other is undervalued. It is the total value that is the concern of the board and the court.

*Id.* at 399, 489 P.2d at 36. Additionally, the court declined to recognize the previous year's valuation of the land as controlling:

> Neither are we concerned with the fact that the property was valued differently the previous year. While there may be some evidentiary value in previous valuation for the purposes of arriving at full cash value, the assessment must be considered on a year-to-year basis, and the previous year's valuation is not controlling.

*Id.*

¶ 21 In this case, Taxpayer essentially asserts that the Assessor must "rollover" the previous valuation. Arizona's rollover statute, A.R.S. § 42–16002.B.1 (Supp.2009), provides for use of the valuation determined on review or appeal in the next tax year *unless*: "[t]here is new construction, a structural change or a change of use on the property." Here, new construction did occur on the Property, and therefore, a rollover of the Board value would not be permissible. A.R.S. § 42–16002.B.1.

¶ 22 Taxpayer argues further that the Assessor is blocked from revaluing the entire property by our holding in *Magellan South Mountain Limited Partnership v. Maricopa County*, 192 Ariz. 499, 968 P.2d 103 (App. 1998). In *Magellan*, however, we reasoned that a predecessor statute, A.R.S. § 42–221.01.A, was designed to give counties an additional nine months "to take account of" newly constructed and reconfigured property on or before September 30 of the valuation year. *Id.* at 502, ¶ 13, 968 P.2d at 106. Consequently, we upheld the assessor's ability to "re-value[ ]" the property and send a

---

7. "[T]he Arizona taxation scheme [is] what is known as the 'unitary plan' under which improvements and the land are valued together as a 'property.'" *In re Westward Look Dev. Corp., Inc.*, 138 Ariz. 88, 89, 673 P.2d 26, 27 (App. 1983).

supplemental notice after learning that the property, which it initially valued as vacant land in 1995, acquired completed apartment buildings by December 2, 1996. *Id.* at 500, 502, ¶¶ 2–3, 13, 968 P.2d at 104, 106.

¶ 23 Taxpayer neglects the implications of our other *Magellan* holding which rejected the taxpayer's equal protection challenge. We held that supplemental notices do not constitute a revaluation, but rather "represent either first-time taxation of new or different property or removal of property previously taxed under an existing tax parcel number." *Id.* at 504, ¶ 24, 968 P.2d at 108. A first-time valuation necessarily includes both the property and its improvements. *See In re Westward Look Dev. Corp., Inc.,* 138 Ariz. at 89, 673 P.2d at 27 (stating that in Arizona, "improvements and the land are valued together as a 'property' "). We similarly construe A.R.S. § 42–15105 to permit the Assessor to revalue the Property as a unit. Accordingly, A.R.S. § 42–15105 does not limit a valuation to the improvements or other alterations triggering a supplemental valuation. *See Magellan,* 192 Ariz. at 504, ¶ 24, 968 P.2d at 108. Under our interpretation, the "new construction, additions to, deletions from or splits or consolidations of assessment parcels and changes in property use" language in A.R.S. § 42–15105 refers to events triggering a new unitary valuation, rather than limits on the Assessor's valuation authority. *See id.*

¶ 24 *Magellan* further supports our interpretation by underscoring:

> The state has a legitimate financial interest in listing and taxing newly constructed property as quickly as practicable. A.R.S. section 42–221.01(A) furthers this interest by giving the counties an additional nine months to add such property to the tax rolls. The state has a similar legitimate interest in ensuring that its taxing subdivisions issue tax bills that are accurate.

*Id.* at 504, ¶ 22, 968 P.2d at 108. Our interpretation promotes these goals by allowing the Assessor the discretion to capture not only the incremental value of the improvements, but also, if appropriate, the added value of the improvements to the Property as a whole.[8]

## The Unitary Theory of Valuation

¶ 25 Taxpayer further argues that the "unitary theory of valuation" does not apply to a supplemental valuation. Taxpayer suggests the unitary theory of valuation is a rule of evidence that applies only in a valuation appeal. Taxpayer supports this contention by arguing that the unitary theory of valuation was superseded by the enactment of the error correction statutes, A.R.S. §§ 42–16251 to –16252 (Supp.2009). We do not interpret the enactment of the error correction statutes in such a manner.

¶ 26 In enacting the error correction statutes, the Arizona Legislature's purpose was "to provide a simple and expedient procedure for correcting of errors occurring in assessing or collecting property taxes, whether they inure to the benefit of the taxpayer or the government." *Lyons v. State Bd. of Equalization,* 209 Ariz. 497, 502, ¶ 21, 104 P.3d 867, 872 (App.2005) (quoting 1994 Ariz. Sess. Laws, ch. 323, § 53). As a result, we held that a taxpayer could pursue an exemption claim either through the error correction statutes or through a valuation appeal. *Id.* at 503, ¶ 24, 104 P.3d at 873; *see Pima County Assessor v. Ariz. State Bd. of Equalization,* 195 Ariz. 329, 333–34, ¶ 14, 987 P.2d 815, 819–20 (App.1999) (explaining that the error correction statutes are intended to remedy property-tax errors "when appropriate to do so in the interest of justice").

¶ 27 After the error correction statutes were enacted, we construed A.R.S. § 42–15105 to allow supplemental notices to permit "either first-time taxation of new or different property or removal of property previously taxed under an existing tax parcel number." *Magellan,* 192 Ariz. at 504, ¶ 24, 968 P.2d at 108. In contrast, the error correction statutes were designed to correct errors made in a prior valuation. *See* A.R.S. §§ 42–16251

---

8. Taxpayer complains that the tax court relied upon two irrelevant statutes in analyzing assessment and full cash value issues. *See* A.R.S. §§ 42–13301.C, –13302.A (Supp.2009). Because our interpretation comports with the tax court's interpretation regarding A.R.S. § 42–15105, we need not address this argument.

to –16254 (Supp.2009). In this case, no such error occurred in any prior valuation. The Assessor's supplemental valuation considered only the events triggering the Supplemental Notice.

¶ 28 The legislative history supports this important distinction. As the Assessor points out, the Arizona Legislature adopted the error correction statutes and A.R.S. § 42–15105 in the same, S.B. 1362. *See* Senate Final Revised Fact Sheet, S.B. 1362 at 2, 6, 41st Leg., 2d Reg. Sess. (Ariz. 1994); House Bill Summary, S.B. 1362 at 3–4, 41st Leg., 2d Reg. Sess. (Ariz. 1994). According to the S.B. 1362 Final Revised Fact Sheet, A.R.S. § 42–15105:

> Eliminates "June increases," the process used by counties to place missed properties on the tax roll every year. For new construction, additions or deletions of locally valued property that occur after January 1 of the valuation year, requires the assessor to notify the taxpayer by September 30, of the valuation year and prescribes appeals procedures.

This language does not limit the scope of the Assessor's valuation; rather, it addresses only the process by which a supplemental notice of valuation is provided.[9] Indeed, nothing in subsequent amendments to S.B. 1362 indicates in any way that the legislature intended to abandon the unitary theory of valuation.

¶ 29 Nor can we agree with Taxpayer's contention that the unitary theory of valuation is an evidentiary rule which applies only in a valuation appeal. In *Transamerica*, the Arizona Supreme Court made clear that:

> [F]or assessment purposes, property valuation must be considered one subject, not to be broken into separate components of land and improvements. The language of the Arizona statutes—which discuss the valuation of Property, appellate review of Property valuation, etc.—indicate that the concern of the Tax Board and the Superior Court should be the reasonableness of the total (land and improvements) valuation

placed on the property, rather than the separate valuations.

107 Ariz. at 399, 489 P.2d at 36. Nothing in this language supports Taxpayer's assertion. As a result, we hold that the unitary theory of valuation was the proper method of valuation in this case.

### Applying the Unitary Theory of Valuation

¶ 30 The parties also dispute whether, if the unitary valuation method applies, Taxpayer's proposed application qualifies as a standard appraisal method for arriving at "full cash value" under A.R.S. § 42–11001.5. Taxpayer contends that the Assessor was limited to tacking new improvement values onto the previously assessed land and improvement values. Under Taxpayer's approach, the Assessor would simply add: (1) the full cash value for the new parking garage, (2) the value for new asphalt and lighting, and (3) the value for 16.14 acres of land, to the initial 2007 tax year full cash value.

¶ 31 We reject Taxpayer's formula. First, Taxpayer's proposed formula is simply an attempt to rephrase its original argument that A.R.S. § 42–15105 is limited to incremental valuation. As previously discussed, however, Taxpayer's argument is at odds with our statutory interpretation and Arizona's longstanding unitary valuation approach. Second, it is also inconsistent with other relevant statutes.

¶ 32 According to A.R.S. § 42–11054.A.1 (Supp.2009), the Arizona Department of Revenue shall "[p]rescribe guidelines for applying standard appraisal methods and techniques that shall be used by the department and county assessors in determining the valuation of property." In applying such techniques, the "[c]urrent usage shall be included in the formula for reaching a determination of full cash value." A.R.S. § 42–11054.C.1. Limiting the Assessor to tacking on the value of improvements would impede his or her ability to account for current usage under this statute.

---

9. Our decision in *Premiere RV* is consistent with this analysis. We explained that A.R.S. § 42–15105 "permits the Assessor to amend the valuation and inform the owner of any change to the

valuation on or before September 30 of the valuation year." *Premiere RV*, 222 Ariz. at 442, ¶ 5, 215 P.3d at 1123. No limit is placed on how to accomplish the supplemental valuation.

¶ 33 The Assessor and Taxpayer also dispute whether the term "change" in A.R.S. § 42–15105 requires a valuation of only the changes themselves. As explained previously, the term "change" refers to the event or events triggering a unitary valuation, not a limit on the method of valuation. The legislative history fails to support the construction Taxpayer advocates. *See* Senate Final Revised Fact Sheet, S.B. 1362 at 2; House Bill Summary, S.B. 1362 at 3–4.

¶ 34 If the Arizona Legislature intended to depart from the unitary valuation approach, it would have done so expressly. Arizona's statutes have consistently accounted for exceptions to the full cash value and current usage method. As the Assessor points out, other examples of statutes preempting the use of standard appraisal methods include: A.R.S. § 42–13403.B (2006) (stating that qualifying land and improvements used in residential common areas are limited to $500 per parcel); A.R.S. § 42–13152.C (2006) (land qualifying as a golf course is valued at $500 per acre); and A.R.S. § 42–13101.A (2006) (land qualifying as agricultural is valued by a modified income approach irrespective of the land's actual market value). No such provision exists here, and we decline to create one.[10]

## CONCLUSION

¶ 35 For the reasons previously stated, we affirm the tax court's grant of summary judgment to the Assessor and deny Taxpayer's request for attorney fees.

CONCURRING: DANIEL A. BARKER and LAWRENCE F. WINTHROP, Judges.

---

**10.** Our resolution of this issue obviates the need to address the parties' arguments relating to the affidavit by Robert Fish, Taxpayer's expert, and Duane Thoms' critique of Fish's analysis on behalf of the Assessor.